NATIONAL LIFE INSURANCE COMPANY v. A. D. GRADY, ADMR. OF N. B. GRADY, DECEASED.

(Filed 2 May, 1923.)

**1. Insurance, Life—Policies—Contracts—Stipulations—Conditions—Good Health—Delivery of Policy—Fraud and Collusion.**

> A clause in the application for a policy of life insurance to become a part of the policy contract when issued, that it will be invalid unless the premium shall be paid on its delivery while the applicant is in good health, is executory until delivery of the policy by the company's authorized agent, and is for the purpose of protecting the company in the event the applicant should theretofore, and since the acceptance by the company, become sick or in ill health; and where the policy has been delivered to the insured or his representative and the premium paid to the company's accredited agent, in the absence of collusion or fraud, the policy becomes a binding contract on the company, irrespective of this clause.

**2. Same—Principal and Agent—Ill Health—Notice to Agent.**

> Where the application for a policy of life insurance provides that the application therefor shall become a part of the policy when issued, and specifying that the policy would be invalid unless the first premium shall have been paid and the policy delivered to the insured while in good health, it is required of the company's authorized agent to deliver the policy and accept the premium, that he satisfy himself of the good health of the insured before making delivery, and in the absence of fraud and collusion between the insured and the agent, the knowledge of the agent

when acting within the scope of the powers entrusted to him, will be imputed to the company, though a direct stipulation to the contrary appears in the policy or the application for the same.

**3. Same.**

The insured during ill health sent his representative to the local agent of the company to whom the company had, according to custom, sent the policy for its delivery and the collection of the first premium; and informed the company's agent that the insured was in ill health, which afterwards resulted in his death, and the agent unconditionally delivered the policy and collected the premium without inquiry as to the health of the insured at that time. There was a clause in the application for the policy, incorporated in the policy itself, that the validity of the policy contract was conditioned upon the continued good health of the insured and his paying the first premium. There was no evidence of fraud by the insured or collusion by him or his representative with the agent, but to the contrary, and *held*, the knowledge or notice of the agent of the ill health of the insured was imputed to the company, and the unconditional delivery of the policy by the agent under the circumstances rendered the policy binding upon the company, and enforceable.

APPEAL by plaintiff from *Calvert., J.,* January Term, 1923, of DUPLIN.

Civil action to cancel an insurance policy of $2,000, on the life of defendant's intestate, issued and delivered in 1920, on the ground that at the time of said delivery the intestate was not in good health, in breach of stipulation of the kind appearing in the application, and which purported to be a part of the contract of insurance. Defendant answered, asserting the validity of the policy and demanding judgment for amount of same. On the trial plaintiff, among other things, put in evidence the contract purporting to bear date 1 September, 1920, insuring the life of intestate in the sum of $2,000, issued in consideration of the application therefor and the payment of a premium of $60.22 on delivery and of a like sum on or before the first of September in every year during the life of the insured, etc. Said policy further contained stipulations as follows: "POLICY THE ENTIRE CONTRACT. This policy and its application, which is made a part hereof and a copy of which is hereon endorsed, together with general provisions contained on the reverse of this page, which are hereby made a part of this policy, as fully as if they were recited at length over the signatures hereunto affixed, constitute the entire contract between the parties." And further: "ALTERATIONS. No one except the president, a vice-president, secretary or actuary of the company, has power, in behalf of the company, to make or modify this policy, to extend the time for paying any premium, to waive any forfeiture, or to bind the company by making any promises or by accepting any representation or information not contained in the application for this policy. These powers will not be delegated." And in the application, made a part of the policy and attached thereto,

appears the following: "I hereby agree that this application and the answers made to the medical examination and the policy applied for shall constitute the entire contract between the parties thereto. (Signed) Needham Bryant Grady." "I hereby certify that I have read all statements and answers in this application (Forms A and B), and agree, on behalf of myself and of any person who shall have or claim any interest in any contract issued thereunder: That no material circumstances or information has been withheld or omitted touching my past and present state of health and habits of life, and that said statements and answers, together with this declaration as well as those made to the company's medical examiner, are complete and true and shall be the basis of the policy hereby applied for; that there shall be no contract of insurance until a policy shall have been issued and delivered to me and the premium thereon paid to the company or its authorized agent, during my lifetime and good health. (Signed) Needham Bryant Grady." There were also facts in evidence tending to show that the intestate, living about twelve miles from Warsaw, N. C., held a policy of $1,000 in plaintiff company. That in latter part of 1920, and on application for a second policy for $2,000 in the company, same was passed upon favorably and the policy for said amount, the subject of this controversy, sent to the local agent J. D. Brown, resident in Warsaw, N. C., for delivery on payment of the premium, etc. That intestate not being presently able to pay, an indulgence was allowed, the local agent retaining the policy. That on Monday, 25 October, 1920, the intestate was in the town of Warsaw, saw the local agent who requested him to take up his policy, but further indulgence was asked for and allowed, intestate saying that he had to take up some notes at the bank and it was not presently convenient to pay. It appeared further from evidence of defendant that at second meeting in Warsaw, intestate complained of not being well, and that fact was made known to the local agent. The facts in evidence further tended to show that on his return home, 25 October, intestate became gradually worse from day to day and died late afternoon, Thursday, 28 October; that the attending physicians seemed to be perplexed by the symptoms of the case but the disease was finally diagnosed as influenza. There was evidence to the effect further that on Monday, 26 October, the local agent having received a letter from H. M. Humphrey, State manager to that effect wrote to intestate addressed to his home office, in terms as follows:

MR. N. B. GRADY, Kenansville, N. C.

DEAR SIR:—Mr. H. M. Humphrey, State manager, writes me that the 45 days he gave you to take up the policy has expired, so please call by and get same, as he writes me that I will have to return the policy unless you take it at once.                    Very truly yours,

(Signed)   J. D. BROWN.

That the letter was received in afternoon 27th, and early on morning of 28th intestate sent the money for the policy by a neighbor, Mr. Tilden Summerlin, who testified that he took the premium money to Warsaw early Thursday morning and told Mr. Brown that Mr. Grady had sent him to get the policy, paid him the premium $60.22, and Mr. Brown handed him the policy. That he could not say whether just before or just after, but about the time he handed me the policy he asked how Needham was (the intestate) and witness replied that he was very sick. On cross examination he said he couldn't swear whether Brown heard him or not. There was supporting evidence for defendant tending to show that the agent knew of his condition. The agent, J. D. Brown, testifying for plaintiff, stated among other things that he didn't see intestate on 25, Monday, and that neither then nor on Thursday when the policy was delivered or any other time was he made aware of the sickness of the intestate. This opposing evidence was submitted to the jury and under the charge of his Honor they have accepted defendant's version, he having instructed the jury, in effect, that if at the time J. D. Brown delivered the policy and received the premium he knew the intestate was sick, this would be a waiver of the stipulation "that there should be no contract of insurance until the policy shall have been delivered during the lifetime of the insured and while he was in good health, etc." The cause was submitted and verdict rendered on the following issue:

"Is the plaintiff entitled to the cancellation and return of the policy for $2,000 on the life of the deceased, N. B. Grady? Answer: 'No.' "

Judgment for the amount of the policy and plaintiff excepted and appealed.

*E. M. Land and H. D. Williams for plaintiff.*
*Stevens, Beasley & Stevens and Duffy & Day for defendant.*

HOKE, J. The authorities on the subject in this jurisdiction are to the effect that where on payment of the first premium a policy is delivered without qualification there is a completed contract of insurance, and the parties thereto are concluded as to a delivery of the policy during the good health of the insured, except in case of fraud. These decisions proceed upon and approve the position that the clause in the application, made a part of the policy, and stipulating that there shall be no contract of insurance except on delivery in good health, is executory in its nature, authorizing the company to withhold the policy in case the insured shall be taken ill before delivery, but where the policy has been finally delivered the company is concluded on this and other stipulations of like kind except, as stated, where there has been fraud on

the part of the insured, or those representing him in the transaction. *Trust Co. v. Ins. Co.,* 173 N. C., 558-563; *Rayburn v. Casualty Co.,* 138 N. C., 379; *Grier v. Ins. Co.,* 132 N. C., 546; *Ray v. Ins. Co.,* 126 N. C., 166; *Kendrick v. Ins. Co.,* 124 N. C., 315. In *Trust Co. v. Ins. Co., supra, Associate Justice Allen* delivering the opinion, and in reference to the subject said: "Nor do we agree to the position that the defendant can avail itself of the plea that the insured was not in good health at the time of the delivery of the policy, and that for this reason, under the terms of the policy the contract never became operative."

If any length of time elapses between the making of the application and the issuing of the policy it is the duty of the defendant to make inquiry when the policy is delivered as to the condition of the health of the insured; and if it fails to do so, the delivery is conclusive against the defendant as to the completion of the contract.

It was so decided in *Grier v. Ins. Co.,* 132 N. C., 546, in which the Court said: "When the policy is not only issued, but delivered, its delivery (in the absence of fraud) is conclusive that the contract is completed (*Ray v. Ins. Co.,* 126 N. C., 166), and it is an acknowledgment of payment during continuance in good health. If the agent had not delivered the policy, whether the circumstances would have justified the withholding of the delivery so as to release the company from responsibility is not a matter before us. He did deliver it, and with full opportunity to see the insured and with a suggestion that he do so, and there is no allegation of fraud and collusion, as in *Sprinkle v. Indemnity Co.,* 124 N. C., 405. The delivery of the policy closed the contract like the delivery of any other deed, and the preliminary provisions of the application for withholding thereof ceased to be of any force. In *Kendrick's case, supra,* the money was not paid till after a lingering illness and on the very day of the death, and then by a friend; but it was held that the delivery of the policy was conclusive as to the contract being complete.

"Numerous authorities can be cited in support of what is here said, but the matter has been sufficiently elaborated in *Kendrick v. Ins. Co.,* 124 N. C., 315; 70 Am. St. Rep., 592. To same purport, *Life Assn. v. Lindley,* (Texas), 68 S. W., 695; *Indemnity Assn. v. Grogan,* (Ky.), 52 S. W., 959; *Ins. Co. v. Koehlar,* 63 Ill., App., 188; *Ins. Co. v. Schlink,* 175 Ill., 284; *Ins. Co. v. Quinn,* 41 N. Y., Supp., 1060; *McElroy v. Ins. Co.,* 94 Fed., 990. In *Life Assn. v. Findly* and *Indemnity Co. v. Grogan* the facts were identical, almost, with those in this case. The actual delivery of the policy concludes the contract, in the absence of fraud."

In *Grier v. Ins. Co.,* and in *Ray v. Ins. Co.,* it was held "that when the policy of insurance is delivered, its delivery, in the absence of fraud, is conclusive that the contract is completed and is an acknowledgment

that the premium was paid during the good health of the insured." And the present *Chief Justice* delivering the opinion in the *Grier case,* said: "The provision in the application that the contract shall not take effect until the first premium shall have been paid, during the applicant's continuance in good health, is only a provisional agreement, authorizing the company to withhold the delivery of the policy until such payment in good health; but when the company actually delivers the policy, then it is estopped, in the absence always of fraud, to assert that its solemn contract is void either on account of nonpayment of premium or of ill health, which stipulations were asserted in the application as conditions to excuse it from such delivery, and are not grounds to invalidate the policy after it has been delivered."

Another principle recognized in this jurisdiction and pertinent to the inquiry is that, in the absence of fraud or collusion between the insured and the agent, the knowledge of the agent when acting within the scope of the powers entrusted to him will be imputed to the company, though a direct stipulation to the contrary appears in the policy or the application for the same. *Gardner v. Ins. Co.,* 163 N. C., 367; *Fishblate v. Fidelity Co.,* 140 N. C., 589; *Grabbs v. Ins. Co.,* 125 N. C., 389; *Follette v. Accident Assn.,* 110 N. C., 378; *Connecticut Indemnity Assn. v. Grogan's Admr.,* 52 S. W., 959; *McElroy v. British America Assur. Co.,* 94 Fed., 990; *Northwestern Life Assur. v. Findley et al.,* 68 S. W., 695; *Germaine Life Ins. Co. v. Koehler,* 63 Ind. App., 188. In *Fishblate's case, supra,* the Court in speaking to the question said: "We are not inadvertent to the clause in the policy which provides that 'no notice or knowledge of the agent or any other person shall be held to effect a waiver or change in this contract or any part of it. . . .' The effect of a clause of this kind has been very much discussed in the courts, and there is high authority for the position that to ignore such a stipulation would be to place an undue limitation on the right of contract, and to threaten the sanctity of written instruments by breaking down the rule that such contracts cannot be changed or varied by parol. But we think the great weight of authority, certainly in the State courts, favors the position that a clause of this character is ineffective for the purpose designed and that an insurance company shall not appoint an agent, use his services, accept the results of his work, and repudiate this essential and inherent feature of the law of agency, that a knowledge of the agent is the knowledge of the company." A proper application of these principles to the facts presented is in favor of defendant's recovery on the policy. There is no suggestion of any collusion between the agent and the insured, nor is there any allegation or evidence tending to show fraud or any concealment from which fraud might be inferred, on the contrary it appears, and under the charge of

his Honor, the jury has necessarily found that on payment of the premium there was unqualified delivery of the policy, the agent at the time having knowledge or notice of the conditions presented.

There is no error, and the judgment for defendant is

Affirmed.