WILLIAM EDWARD FAIRCLOTH, JR., v. OHIO FARMERS INSURANCE COMPANY, A CORPORATION.

(Filed 14 December, 1960.)

1. Insurance § 88—

   Insurer's contention that nonsuit in this action on a fire policy should have been granted for that insured's evidence disclosed that the fire occurred more than sixty days after verbal notice by insured of the removal of the property to a new location, and that therefore the oral contract was ineffectual under G.S. 58-177(d), was properly denied when insured does not rely upon a verbal agreement but upon waiver or estoppel of insurer to assert the provision as to the location of the personalty insured.

2. Insurance § 76— Evidence held sufficient to support finding that insured paid additional premium to cover property at new location.

   In a trial by the court under agreement of the parties, evidence that insurer's agent notified insured of an additional premium for coverage upon the transfer of the personalty insured to another location, that insured, in financing the premium through a finance company, sent to insurer's agent the regular monthly payment, together with such additional premium, and that insurer's agent sent the check to the finance company without advising it of the payment of the additional premium, is held sufficient to sustain the court's findings that insured paid such additional premium, even though the finance company thereafter marked the contract satisfied when the amount paid equalled only the regular premium, it being a permissible inference that the finance company failed to collect the total amount because of the failure of insurer's agent to advise it of the payment of the additional premium.

**3. Insurance § 77—**

An insurer may waive or be estopped to rely on a provision or condition in a policy of insurance on personalty relating to the location of the property at a specified place.

**4. Insurance §§ 5, 80—**

In the absence of fraud or collusion between the insured and the agent, the knowledge of the agent when acting within the scope of the powers entrusted to him will be imputed to the insurer, even though a direct stipulation to the contrary appears in the policy.

**5. Same—**

Evidence tending to show that insured notified insurer's agent of the removal of the personalty insured from the location designated in the policy, that the agent advised insured to send an additional premium to cover the cost of extending coverage to the new location, that insured paid the additional premium and that the agent had knowledge of the new location, *is held* sufficient to sustain the conclusion that insurer waived the provisions of the policy or is estopped to rely thereon, even though endorsement modifying the policy in this respect was never issued.

**6. Estoppel § 6—**

Even though an estoppel must be pleaded, where the facts constituting the basis of the estoppel are set out in the pleading there is a sufficient pleading of the estoppel, notwithstanding the term "estoppel" is not used.

APPEAL by defendant from *Clark, J.,* Regular February 1960 Civil Term, of BRUNSWICK.

Civil action on a fire insurance policy.

The parties, pursuant to G.S. 1-184-1-185, waived trial by jury, and agreed that the judge might find the facts, make conclusions of law, and render judgment thereon.

## FINDINGS OF FACT MADE BY JUDGE SUMMARIZED.

On 27 December 1957 plaintiff purchased in Raleigh a fire insurance policy in the amount of $1,500.00 from defendant through its agent Albert R. Perry, Jr., covering "Contents — In One-story, approved roof, frame walls dwelling, two-family apartment, located 214 S. Bloodworth Street, Raleigh, North Carolina." The policy was for a term of one year beginning 27 December 1957, and the total premium was $8.00. At the same time Perry sold plaintiff another policy on his automobile. Plaintiff paid Perry $7.65 in cash, and at Perry's suggestion executed a premium finance contract, effective the same date, with Century Consumer Discount Company promising to pay to the order of Century Consumer Discount Company the balance of the premiums on both policies in the amount of $30.35 plus a service charge of $2.65, which made the total amount $33.00, in

six monthly payments of $5.50 each, beginning 27 January 1958. In the premium finance contract, Century Consumer Discount Company agrees as attorney in fact for plaintiff to perform, *inter alia,* the following services for plaintiff:

"(a) Provide a plan whereby the premium or the balance thereof as set forth in the above statement of account may be budgeted by the UNDERSIGNED on a monthly basis.

"(b) Pay to the insurance company or its duly authorized agent the premium or balance thereof as set forth in the above statement of account."

Whereupon, defendant by its agent Perry, delivered its fire insurance policy to plaintiff.

On 25 January 1958 plaintiff paid the first monthly installment on the premium finance contract of $5.50 to Perry, agent of defendant, in his office, and Perry gave him a written receipt. The receipt was marked: "For Century Consumer Discount Co., 1st Budget Paym't." At the same time plaintiff notified Perry he was moving his personal property insured by defendant's policy from Raleigh to a farm near Shallotte, North Carolina. Perry wrote on a pad in his office a description and location of the house near Shallotte, and told plaintiff to send in an additional sum of $3.10 with his next monthly installment payment to cover the cost of extending the insurance coverage on his personal property at the new location.

On 18 February 1958 plaintiff made the February installment payment by postal money order of $5.50 to Perry. On 25 March 1958 he made an installment payment of $5.50 plus $3.10 for coverage by the policy at the new location by cheque in the amount of $8.60, which cheque was endorsed by Century Consumer Discount Company. On 28 April 1958 and 27 May 1958 plaintiff paid the regular installment payments of $5.50 by money order mailed to Century Consumer Discount Company. On 4 June 1958 he received notice from Century Consumer Discount Company that he owed a balance on his contract of $2.40 plus 25¢ penalty. Whereupon, he sent it $2.40 by money order, and received from it the premium finance contract marked paid on 20 June 1958.

Plaintiff never received any endorsement from defendant showing change in location of his property insured by defendant's policy. On 30 June 1958 his dwelling near Shallotte was destroyed by fire, including his personal property therein insured by defendant's policy. The fair market value of his insured personal property was $1,600.00, all of which was unencumbered, except for a balance of $70.00 on

a refrigerator, which was covered by insurance payable to mortgagee.

Before 12 July 1958 plaintiff notified defendant's agent, Albert R. Perry, Jr., in Raleigh of the destruction of his insured property by fire, and defendant informed him that his fire insurance policy had been cancelled, and he was due a premium refund. This was the first notice he had received of cancellation.

The court concluded that defendant was estopped to deny the extension of the insurance coverage to the new location by the acts of its agent, and the payments made to the agent by the plaintiff upon direction of the agent, and entered judgment against defendant in the amount of $1,500.00.

From this judgment, defendant appeals.

*S. B. Frink and E. J. Prevatte for plaintiff, appellee.*
*James, James & Crossley for defendant, appellant.*

PARKER, J. Only a part of the fire insurance policy here is set forth in the case on appeal. However, it seems to be a Standard Fire Insurance Policy of the State of North Carolina, and it so stated in defendant's brief.

Defendant's first assignment of error is that the court committed error in denying its motion for judgment of involuntary nonsuit under G.S. 58-177(d) made at the close of plaintiff's evidence. Defendant offered no evidence. G.S. 58-177(d) provides: "Binders or other contracts for temporary insurance may be made, orally or in writing, for a period which shall not exceed sixty days, . . . ." Defendant's contention is this: "Therefore, if the plaintiff is relying upon the alleged oral contract for a recovery against the defendant insurance company, as an oral contract for temporary insurance, it must fail because more than sixty days had expired, for the alleged agreement, if made, was made on January 25, 1958, and the fire did not occur until June 30, 1958, or more than five months thereafter. Therefore, a motion to dismiss should have been allowed." Defendant later states in its brief: "We respectfully submit, however, that the alleged oral agreement was not a contract for temporary insurance. It will be observed that the complaint alleges that the policy in question was executed and delivered to the plaintiff on December 27, 1957, at which time the property in question was located at 214 South Bloodworth Street, and that thereafter on January 25, 1958, the property insured was moved to the Claude Gore farm in Brunswick County. Therefore, the policy of insurance at the time it was issued became a valid and binding contract and could thereafter

only be modified as provided in the policy itself." It would have been improper to nonsuit plaintiff on the ground that he could not recover because of G.S. 58-177(d), for the reason that plaintiff's action is based upon defendant's waiver of, or estoppel to assert, provisions of its fire insurance policy respecting location of personal property covered therein, and not upon an oral contract in respect to change of location of plaintiff's insured personal property.

Defendant's second assignment of error is that the court committed error in denying its motion for judgment of involuntary nonsuit on all the evidence.

Defendant's third assignment of error is that the court committed error in finding as a fact that plaintiff "on March 25, 1958 sent check for $8.60 representing the regular payment of $5.50 and the additional $3.10 charged for extending the coverage to the new location."

Plaintiff testified: "I notified him (Albert R. Perry, Jr., defendant's agent) I was going to move to Shallotte. I was working for Wake Oil Company. After I moved to Shallotte, I was working for W. C. Gore. Mr. Perry told me the additional premium for the transfer would be $3.10. The $5.50 monthly payment for March and the $3.10 would amount to $8.60. This is a true photostatic copy of the check I mailed to Mr. Perry. I identify it as: PLAINTIFF'S EXHIBIT VI. It is for $8.60." This exhibit is a photostatic copy of the cheque, and is as follows:

"WACCAMAW BANK AND TRUST COMPANY      66-962
       Shallotte, N. C. March 25, 1958
Pay to the Order of
       WILLIAM EDWARD FAIRCLOTH, JR.          $8.60
Eight and 60/100......................................Dollars
                          /s/ W. C. Gore
       Endorsed on back by William Edward Faircloth, Jr. FOR DEPOSIT ONLY: Century Consumer Disc. Co. Two rubber stamps from bank."

Defendant contends that plaintiff's documentary evidence shows the premium finance contract called for the payment of $33.00, that plaintiff paid on this contract only $33.00, and, therefore, this evidence shows defendant never received one penny of the $3.10 additional premium to cover transfer of the insured property to another location. The monthly installment payment for March 1958 was $5.50 and the additional premium for change of location was $3.10. Plaintiff mailed a cheque for $8.60 dated 25 March 1958 to defend-

ant's agent Perry. Perry must have sent this cheque to Century Consumer Discount Company, for the cheque shows it deposited it. It is a fair inference this $8.60 cheque was paid upon presentation, for there is no intimation in the evidence to the contrary. Plaintiff testified: "He (defendant's agent Perry) made out premium finance contract." It is a fair inference that Century Consumer Discount Company sent the payment of $8.60 to defendant, according to its contract with plaintiff, and there is no intimation in the evidence to the contrary. It seems clear from all the evidence that defendant received the $3.10 additional premium from plaintiff to cover transfer of his insured property to another location, and still has it. There is competent evidence offered by plaintiff to support the challenged finding of fact, and defendant's assignment of error in respect thereto is overruled.

The policy provides for other coverages only when endorsed on it or added thereto. The policy also provides "against all direct loss by fire . . . to the property described hereinafter while located or contained as described in this policy . . . but not elsewhere." The policy contains this waiver provision: "No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be. . . ."

The question we have to consider is whether or not defendant is estopped to rely on these provisions.

According to the great majority of cases, an insurance company may waive, or be estopped to rely on, a provision or condition in a policy of insurance relating to the location of the property at a specified place. State Farm F. Ins. Co. v. Rakes, 188 Va. 239, 49 S.E. 2d 265, 4 A.L.R. 2d 862; Bankers F. & M. Ins. Co. v. Draper, 242 Ala. 601, 7 So. 2d 299; Delaware Ins. Co. v. Wallace (1913; Texas Civ. App.) 160 S. W. 1130; Montgomery v. Delaware Ins. Co., 55 S.C. 1, 32 S.E. 723; Anno. 4 A.L.R. 2d 871, where many other cases to the same effect are cited.

In Appleman's Insurance Law and Practice, Vol. 17, § 9569, page 261, et seq., it is said that, "Although removal of personalty from the insured location may constitute a breach of a policy avoiding liability on the part of the insurer, such conditions of forfeiture are for the company's benefit and may be waived by it, or it may be estopped to rely thereon." The foregoing general statement is followed by an elaborate discussion of the subject and citations of authority.

The general rule is thus stated in 29A Am. Jur., § 872, page 86: "While in a minority of cases the view has been taken that the

restriction of the coverage to the property while located at a specified place is such an essential and integral part of the agreement itself that it cannot be waived or the coverage extended by estoppel to a different location, according to the great majority of cases an insurance company may waive, or be estopped to rely on, a provision or condition in a policy of insurance relating to the location of the property at a specified place. The rationale of the rule is that the restriction as to location is a provision of forfeiture for the benefit of the insurer which it may waive at its election." To the same effect see 45 C.J.S., Insurance, § 674, page 619.

This Court said in *Ins. Co. v. Grady*, 185 N.C. 348, 117 S.E. 289: "Another principle recognized in this jurisdiction and pertinent to the inquiry is that, in the absence of fraud or collusion between the insured and the agent, the knowledge of the agent when acting within the scope of the powers entrusted to him will be imputed to the company, though a direct stipulation to the contrary appears in the policy or the application for the same."

Upon the facts found by the judge plaintiff told defendant's agent Perry that he was moving his personal property insured by its policy to a new location. This agent wrote on a pad in his office a description and location of the house plaintiff was moving his personal property into, and told plaintiff to send in an additional sum of $3.10 with his next monthly payment on the premium finance contract to cover the cost of extending coverage to the new location. Plaintiff paid the additional sum of $3.10, as told him by defendant's agent. This knowledge of the agent of the change of location of plaintiff's personal property, being within the scope of the powers entrusted to him, will be imputed to the defendant, as there is no suggestion of fraud between the agent and plaintiff. Equitably, if defendant did not desire to carry the risk longer, because of the change in the location of plaintiff's personal property, it ought, in fair dealing, to have returned the unearned premium, and rescinded the insurance contract, so that plaintiff could have known he no longer was protected thereby and would have been afforded an opportunity to obtain a new policy from another agent. It was only after plaintiff's personal property had been destroyed by fire, and he had notified defendant of such fact that the defendant notified him that his policy had been cancelled. The fact that the premium finance contract was returned to plaintiff marked paid, and that only $29.90 was paid on it instead of $33.00 seems clearly attributable to the failure of defendant's agent to notify Consumer Discount Company that the March payment of $8.60 was for the monthly installment

of $5.50 and $3.10 additional premium for transfer of his insured personal property to another location. All the evidence shows defendant received the $3.10 additional premium. And, it seems equally clear that defendant's agent failed to notify defendant that plaintiff had paid $3.10 additional premium for coverage of his personal property in a new location, and that this was the reason that defendant did not issue to plaintiff an endorsement to that effect, and did not receive all of the $33.00 specified in the premium finance contract. We think, and so hold, upon the facts found by the judge, the defendant is estopped to interpose as a defense to its liability, the failure of its agent to perform his duty.

It is contended by defendant that the estoppel is not pleaded. This contention is without force. The answer is, that construing the complaint liberally with a view to substantial justice between the parties, (G.S. 1-151), the facts which are necessary to constitute the estoppel are alleged in the complaint. Everything does appear in the complaint which goes to make out this position, except simply naming it as an estoppel in terms, and this is not of the substance. *Alston v. Connell*, 140 N.C. 485, 53 S.E. 292; *Worthington v. Wooten*, 242 N.C. 88, 86 S.E. 2d 767.

The facts found by the judge are supported by competent evidence, and the facts found support his conclusion of law based thereon, and his judgment. It, therefore, follows the judgment is

Affirmed.