**NORTHERN ASSURANCE COMPANY OF AMERICA, Appellant,**

v.

**David SPENCER and wife, Mary R. Spencer, Appellees.**

No. 10547.

United States Court of Appeals Fourth Circuit.

Argued Oct. 4, 1966.

Decided Nov. 21, 1966.

Walter Lee Horton, Jr., Raleigh, N. C. (Dupree, Weaver, Horton, Cockman & Alvis, Raleigh, N. C., on brief), for appellant.

Stanley J. Corne, Newton, N. C. (James C. Smathers, Hickory, N. C., and Corne & Warlick, Newton, N. C., on brief), for appellees.

Before SOBELOFF, BELL and WINTER, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

This is an appeal from a declaratory judgment action brought in the district court to determine the rights and liabilities of insurer and insured under a standard-form homeowner's insurance policy. Jurisdiction is based on diversity of citizenship, and North Carolina law applies. Jury trial was waived.

On June 16, 1961, plaintiff, the Northern Assurance Company, issued to the defendants, the Spencers, a "Homeowner's Policy" insuring their dwelling, which was located in Hickory, North Carolina, and subject to a mortgage held by Fidelity Federal Savings and Loan Association. The policy was issued through the Tunstall Insurance Agency, also located in Hickory. During the summer of 1962, Spencer decided to conduct a hosiery business in the basement of the insured dwelling. He applied to Fidelity for a loan of $5,500.00, the cost of 17 knitting machines he intended to purchase. The new loan was to be secured by the existing mortgage on Spencer's dwelling, and Fidelity advised him that additional fire insurance on the dwelling would be required to cover the increased amount of the mortgage. Immediately thereafter, Spencer went to the Tunstall Insurance Agency, which had handled his insurance for a number of years, and talked with Miss Poteat, an employee clerk of the agency, who was the only person in the office at the time. Miss Poteat's duties with the agency consisted of typing renewal policies and talking to customers when Mr. Tunstall or his office manager and general secretary, Mrs. Burns, was not available. She would take notes on the customers' requests and turn them over to Mr. Tunstall or Mrs. Burns, who would make any adjustments necessary. Spencer did not know Miss Poteat, nor was he acquainted with her duties. Spencer told Miss Poteat that he was borrowing money on his dwelling in order to purchase knitting machines which would be installed and operated in his basement and that he would need additional insurance. Miss Poteat made a note for Mr. Tunstall or Mrs. Burns to increase the policy coverage by $1,000.00. The coverage was accordingly increased on October 9, 1962, by Mrs. Burns's endorsement on the original policy. Spencer was billed for and paid an additional premium of $2.05.

On August 1, 1963, a fire occurred in the insured dwelling. The blaze started in the garage and spread to the house. The basement and the knitting machines were not damaged. The district court found that the installation and operation of the machines did not cause or contribute to the fire, although their installation and operation did increase the hazard within the meaning of the terms of the policy. The policy provided that the insurer would not be liable for loss occurring "while the hazard is increased by any means within the control or knowledge of the insured." Another provision

of the policy stated that no waiver of the terms of the policy would be valid "unless granted herein or expressed in writing added hereto."

The district court held Northern liable under the policy on the ground that since Northern's agent, the Tunstall agency, knew of the change in use of the insured's dwelling, Northern had waived or was estopped to assert the "increase of hazard" provision of the policy. The court granted Spencer damages on his counterclaim. Northern challenges the district court decision in several respects.

■ Northern contends that the district court's findings of fact are clearly erroneous within the meaning of Rule 52(a) of the Federal Rules of Civil Procedure and therefore should be reversed. First, Northern contends that Spencer's testimony regarding his conversation with Miss Poteat, which was uncorroborated (Miss Poteat testified that she could not remember the conversation), was not worthy of belief, so that the district court's findings of fact based upon that testimony should be set aside. We find nothing in the record to justify a determination that the district court was clearly erroneous in giving credence to Spencer's testimony and the findings stand under Rule 52(a).

■ Northern next contends that the court clearly erred in finding that Miss Poteat was acting within the scope of her authority in accepting the information regarding the change in use of insured property and in not finding that Spencer had a duty to inquire as to her authority. In Edgecombe Bonded Warehouse Co. v. Security Nat'l Bank, 216 N.C. 246, 4 S.E. 2d 863, 868 (1939), the North Carolina Supreme Court stated the following rule:

> "While as between the principal and the agent the scope of the latter's authority is that authority which is actually conferred upon him by his principal, * * * as between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which

the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. The apparent authority, so far as third persons are concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority." (quoting from Norfolk So. Ry. Co. v. Smitherman, 178 N.C. 595, 101 S.E. 208, 210 (1919)).

The evidence in the present case shows that Miss Poteat was left alone in the office and that she was accustomed to talking with customers. Spencer did not know her or what her authority was, but he was accustomed to dealing with someone in the office other than Mr. Tunstall himself. When Spencer asked to see Mr. Tunstall, Miss Poteat told him Tunstall was not in and offered to help him (Spencer). We cannot say that the district court was clearly erroneous in finding that Spencer reasonably assumed that Miss Poteat had authority to accept the information he related to her.

Northern challenges the district court's finding of law that the doctrine of estoppel or waiver is applicable to the present case under North Carolina law. Northern argues that the district court's finding of fact that the hazard had been increased by the installation and operation of the knitting machines precluded any finding of estoppel or waiver, since the policy expressly required any waiver to be in writing.

■ The North Carolina Supreme Court has frequently asserted that an insurer may not escape application of waiver or estoppel when appropriate merely because of the waiver provision contained in the standard-form policy. E.g., Faircloth v. Ohio Farmers Ins. Co., 253 N.C. 522, 117 S.E.2d 404 (1960); Cato v. Hospital Care Ass'n, 220 N.C. 479, 17 S.E.2d 671 (1941); National Life Ins. Co. v. Grady, 185 N.C. 348, 117 S.E. 289 (1923); Grabbs v. Farmers' Mut.

Fire Ins. Ass'n, 125 N.C. 389, 34 S.E. 503 (1899). The North Carolina court said, in National Life Ins. Co. v. Grady, 185 N.C. 348, 117 S.E. 289, 291 (1923):

"Another principle recognized in this jurisdiction and pertinent to the inquiry is that, in the absence of fraud or collusion between the insured and the agent, the knowledge of the agent when acting within the scope of the powers intrusted to him will be imputed to the company, *though a direct stipulation to the contrary appears in the policy * * \**.*" [Emphasis added.]

There is no doubt that under North Carolina law Tunstall was a general agent of Northern with authority to waive policy provisions through his knowledge in cases where estoppel or waiver is applicable. Tunstall had authority to fill out, sign and issue fire insurance policies previously signed by Northern's officers without further authorization from the company. This is apparently the general practice with regard to fire insurance policies, and the North Carolina court has said, concerning the agent's authority under this procedure:

"Under such circumstances, can it be doubted that the policy is really issued by the agent, who, for all purposes connected with such insurance, is the alter ego of the insurer? That he is, seems too well settled to need citation of authority, and therefore his knowledge is the knowledge of the company." Grabbs v. Farmers' Mut. Fire Ins. Ass'n, 125 N.C. 389, 34 S.E. 503, 505 (1899).

■ In determining when estoppel or waiver may properly be applied in insurance cases, the North Carolina Supreme Court makes a distinction between situations in which the knowledge of the agent was acquired before issuance of the policy and those in which the knowledge of the agent was acquired after issuance. In Greene v. Aetna Ins. Co., 196 N.C. 335, 145 S.E. 616, 618 (1928), the rule was stated as follows:

"Conditions with respect to the property insured by a policy of fire insurance, existing at the time the policy was issued, and known by the agent of the company, who issued the policy, cannot be relied upon to defeat the liability of the company under the policy, for, notwithstanding the provisions of the policy, the knowledge of the agent is imputed to the company. * * *

"After a policy has been issued, and has become a valid and binding contract between the parties, knowledge by the agent, who issued it, of the breach of a stipulation or condition, which by the express terms of the policy renders it void, will not be imputed to the company. In such case, forfeiture of the policy for such breach can be waived only in accordance with the provisions of the policy."

■ The basis for this rule seems to be that an insurer "cannot be permitted to knowingly issue a worthless policy upon a valuable consideration." Grabbs v. Farmers' Mut. Fire Ins. Ass'n, 125 N.C. 389, 34 S.E. 503, 505 (1899). In Johnson & Stroud v. Rhode Island Ins. Co., 172 N.C. 142, 90 S.E. 124, 127 (1916), the court said:

"The restrictions inserted in the contract upon the power of the agent to waive any condition * * * cannot be deemed to apply to those conditions which relate to the inception of the contract when it appears that the agent has delivered it and received the premiums with full knowledge of the actual situation." (quoting from Wood v. American Fire Insurance Co., 149 N.Y. 382, 44 N.E. 80, which had previously been quoted with approval by the North Carolina courts) [Emphasis added.]

In Faircloth v. Ohio Farmers Ins. Co., supra, the North Carolina Supreme Court created an exception to the rule that only conditions known by the agent at the time of issuance of the policy can constitute the basis for application of waiver or estoppel. In that case the insurer had issued to the insured a fire

insurance policy on personalty. The policy specifically provided that the property was covered "while located or contained as described in this policy * * * but not elsewhere" and contained the standard provision requiring any waiver to be endorsed upon the policy. The insured informed the local insurance agent that he (the insured) intended to remove the personalty to another location. The agent wrote on a pad the location and description of the new location and told the insured to send an additional $3.10 with his next monthly payment to cover the cost of extending coverage as requested. The insured paid the additional sum. The court, in holding that estoppel or waiver was applicable, said:

"This knowledge of the agent of the change of location of plaintiff's personal property, being within the scope of the powers entrusted to him, will be imputed to the defendant, as there is no suggestion of fraud between the agent and plaintiff. Equitably, if defendant did not desire to carry the risk longer, because of the change in the location of plaintiff's personal property, it ought, in fair dealing, to have returned the unearned premium, and rescinded the insurance contract, so that plaintiff could have known he no longer was protected thereby and would have been afforded an opportunity to obtain a new policy from another agent. It was only after plaintiff's personal property had been destroyed by fire, and he had notified

defendant of such fact that the defendant notified him that his policy had been cancelled." 253 N.C. at 528, 117 S.E.2d at 408–409.

Thus, the rule of the *Faircloth* case is that if the insured gives some new consideration at the time when the agent acquires knowledge of the condition which would invalidate the policy, this knowledge will be imputed to the insurer as if the policy had been reissued, and estoppel or waiver will be applicable.[1]

We think the present case is controlled by the North Carolina Supreme Court's decision in *Faircloth*, its most recent opinion dealing with application of estoppel and waiver to insurance policies that is relevant to the facts of our case.[2] In our case Spencer gave a new consideration at the time that he informed Northern's agent of the change in use of the insured premises by incurring liability for an additional premium. Northern, through its agent, amended the policy, increasing coverage, and accepted the premium after it had knowledge of the increased hazard. Northern cannot now be heard to say that it amended for a valuable consideration an ineffective policy. Under the rationale of *Faircloth*, if the company was not willing to continue coverage because of the additional risk, it should have "in fair dealing" cancelled the policy and returned the additional and unearned premiums.

Judgment of the court below is

Affirmed.

---

1. This seems to be the general rule. See 5 Williston, Contracts §§ 752–53 (3d ed. 1961).

2. The case of Winston-Salem Fire Fighters Club, Inc. v. State Farm Fire & Cas. Co., 259 N.C. 582, 131 S.E.2d 430 (1963), relied upon by Northern, is not in point.

Although the court did in dicta state the general rules recited in this opinion, the basis for the decision in that case was a finding that the insured had not presented evidence sufficient to establish its allegation of knowledge on the part of the insurer's agent at the time the policy was issued.