WYNN, Circuit Judge:
Plaintiff Colony Insurance Company (“Colony”) appeals from a final judgment entered upon a jury verdict awarding $2,369,000 to Defendants Charles A. Peterson (“Peterson”), Evergreen Composite Technology, LLC (“Evergreen”), and Randolph Bank and Trust Company (“Randolph Bank”) (collectively “Defendants”) on their insurance claim. The jury found that Colony waived its right to rescind a commercial property policy issued to Defendants and was estopped from denying coverage for loss after a fire damaged a building covered by the policy. On appeal, Colony contends that the district court erred in denying its motion for judgment as a matter of law. For the reasons below, we affirm.
I.
In reviewing the denial of a motion for judgment as a matter of law, we must view and recite the evidence in the light most favorable to the non-movants. Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir.2003).
*158 Effective March 16, 2010, Colony, a Virginia insurance company, issued a commercial property policy insuring a 95,000-square-foot vacant building located at 501 Hamilton Road, Montezuma, Georgia (“the 501 building”). The policy named Evergreen, a Georgia corporation headquartered in North Carolina, and its owner, Peterson, a North Carolina resident, as the insured. The policy also listed Randolph Bank, a community bank in Randolph County, North Carolina, as a mortgage holder and loss payee under the policy. The policy provided coverage limits of up to $1 million for the 501 building and $3.5 million for the business-related personal property on the site.
Peterson had obtained loans from Randolph Bank to launch Evergreen, which manufactured composite wood products used in residential decking, fencing, and railings. As collateral for its loans, Randolph Bank held a deed of trust on the 501 property and perfected a security interest in the equipment located there. By late 2009, Evergreen had suspended its operations and was in default on its loans from Randolph Bank.
In February 2010, a fire, caused by arson, damaged a nearby building also owned by Evergreen (“the 261 building”). Thereafter, upon learning that the insurance on both buildings had lapsed, Randolph Bank engaged third-party defendant Edward Clayton (“Clayton”), an insurance agent with HPB Insurance Group, to assist in obtaining insurance coverage for the 501 building. The policy issued by Colony insured the 501 building against, among other things, risk of loss caused by fire. To mitigate this risk, the policy contained an endorsement requiring certain fire protective safeguards.
Specifically, the fire protective safeguards endorsement required Evergreen and Peterson to maintain an automatic sprinkler system, fire extinguishers, and functioning utilities at the 501 building. The fire protective safeguards endorsement stated that Colony would “not pay for loss or damage caused by or resulting from fire if, prior to the fire,” the named insured “[flailed to maintain any protective safeguard ... in complete working order” or “[k]new of any suspension, malfunction or impairment in any protective safeguard” and failed to notify Colony. J.A. 114.
On the same day that Colony issued the policy, it retained an independent vendor, Safety Resources, to inspect the 501 building. Colony charged Defendants a $250 non-refundable inspection fee, which was separate from the $18,000 policy premium. According to the policy, the inspection “relate[d] only to insurability and the premiums to be charged.” J.A. 75. The inspection provided Colony “the chance to independently look at the risk that it [was] insuring.” J.A. 454. By paying the $250 fee, Defendants expected Colony “to notify [them] if problems were identified by the inspection” so that they could remedy them. J.A. 1376.
Safety Resources inspected the 501 building on April 13, 2010 and prepared a written report, which noted that the utilities for the 501 building were off and that there was no heat. This contradicted information provided to Colony during the insurance application process. Specifically, Clayton had submitted a “Specialty Property Vacant Supplement” form that indicated that the power and heat would remain on at the 501 building during vacancy. Colony received the inspection report on April 21, 2010, but the underwriter at Colony did not review the report until June 18, 2010. Nevertheless, Colony issued a mortgagee endorsement on April 22, 2010, and a loss payee endorsement on May 6, 2010, both with retroactive effect as *159 of March 16, 2010, and naming Randolph Bank as a mortgagee and loss payee on the policy.
On May 18, 2010, a fire damaged the 501 building and its contents. Firefighters discovered that the two valves controlling the sprinkler system had been turned off. Evidence at the scene indicated that the valves had likely been “tampered with and vandalized.” J.A. 761.
Colony subsequently denied coverage for the loss and sought a declaratory judgment regarding its indemnity obligations under the policy. Colony argued that material misrepresentations on the insurance application rendered the policy void and that breach of the fire protective safeguards endorsement precluded coverage. Defendants counterclaimed for breach of contract. Evergreen and Peterson also asserted a cross-claim against Randolph Bank and filed a third-party complaint against Clayton and HPB Insurance Group.
All parties sought summary judgment, which the district court denied. Regarding Colony’s claims, the district court held that genuine issues existed “as to whether the doctrines of waiver/estoppel prevent Colony from contesting coverage under the [pjolicy.” J.A. 355. Accordingly, the case proceeded to trial.
At trial, Defendants introduced deposition testimony by Roseanne Gauthier, the senior underwriter at Colony responsible for determining whether the conditions of insurance for the 501 building were met. In her testimony, Gauthier acknowledged that she received the inspection report from Safety Resources on April 21, 2010, but that she “just did not get to the inspection by the time the loss occurred.” J.A. 1051. Gauthier stated that had she reviewed the inspection report when she received it, she would have “immediately” taken steps to cancel the policy. J.A. 1053.
Defendants also presented evidence of other Colony underwriting files in which discrepancies appeared between some of the representations made on insurance applications and the conditions revealed by Colony’s inspections. Regarding those files, Colony did not seek to rescind, and policyholders remedied the conditions or paid higher premiums.
At the conclusion of the evidence, Colony moved for judgment as a matter of law. The district court took the motion under advisement and allowed the case to go to the jury. The jury returned a verdict in favor of Defendants, finding that although a material misrepresentation appeared on the insurance application and that a condition of the fire protective safeguards endorsement requiring functioning utilities to remain on had been breached, Colony had nonetheless waived its right to rescind the policy and was estopped from denying coverage. Further, the jury determined that Randolph Bank was not responsible for the misrepresentation on the application. The jury awarded Defendants $2,369,000 on their counterclaim for coverage under the policy, and the court awarded prejudgment interest.
On December 3, 2012, the district court denied Colony’s motion for judgment as a matter of law and subsequently entered final judgment in favor of Defendants. This appeal followed.
II.
Colony argues that the district court erred in denying its motion for judgment as a matter of law. “We review de novo the grant or denial of a motion for judgment as a matter of law[,]” Anderson v. Russell, 247 F.3d 125, 129 (4th Cir.2001), to determine whether “a reasonable jury would not have a legally sufficient eviden *160 tiary basis to find for the [non-moving] party[.]” Fed.R.Civ.P. 50(a)(1).[1] “If, viewing the facts in the light most favorable to the non-moving party, there is sufficient evidence for a reasonable jury to have found in [the non-moving party’s] favor, we are constrained to affirm the jury verdict.” Lack v. Wal-Mart Stores, Inc., 240 F.3d 255, 259 (4th Cir.2001).
We note that North Carolina law governs our analysis of this diversity case. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, we first look to see if the Supreme Court of North Carolina has spoken on this issue; if not, we must predict how that court would rule on it. Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005).[2] In forming that prediction, we may consider opinions from the North Carolina Court of Appeals, teachings of treatises, and practices of other states. Id.
A.
Colony contends that the district court should have granted judgment as a matter of law because the jury determined that Peterson or Evergreen breached the fire protective safeguards endorsement. Colony asserts that maintaining functioning utilities, as required by the fire protective safeguards endorsement, was a condition of coverage immune to waiver, and that the district court therefore erred in denying judgment as a matter of law.
Under North Carolina law, an insurer may waive “a provision or condition in an insurance policy which is for its own benefit.” Brandon v. Nationwide Mut. Fire Ins. Co., 301 N.C. 366, 271 S.E.2d 380, 383 (1980). North Carolina courts have long held that
the breach of any condition in [an insurance] policy, as against an increase of risk or by keeping of certain hazardous goods ... or, indeed, the violation of any of the conditions of the policy, may be waived by the insurer; and a waiver may be implied from the acts and conduct of the insurer after knowledge that such conditions have been broken.
Blue Bird Cab Co. v. Am. Fid. & Cas. Co., 219 N.C. 788, 15 S.E.2d 295, 301 (1941) (alteration in original) (quotation marks omitted). Similarly, an insurer may be estopped from denying coverage under an insurance policy. Estoppel arises if the insurer’s “actions or silence when [it] ought to have spoken, intentionally or through culpable negligence, induce[s] [the insured] to believe ... coverage exist[s]” and the insured relies upon such belief to his or her detriment. United States Fid. & Guar. Co. v. Country Club of Johnston Cnty., Inc., 119 N.C.App. 365, 458 S.E.2d 734, 740 (1995).
The Supreme Court of North Carolina has not spoken directly on the precise issue in this matter, but the decisions of that state’s second highest court, the North Carolina Court of Appeals, provide us with guidance. See Twin City Fire Ins. Co., 433 F.3d at 369. In that regard, we find Durham v. Cox particularly illuminating. 65 N.CApp. 739, 310 S.E.2d 371 (1984).
*161 In Durham, the North Carolina Court of Appeals determined that material issues of fact existed as to whether the defendant insurance company waived its right to deny coverage under a homeowner’s policy for loss following a fire. 310 S.E.2d at 376-77. The policy stated that “[t]his coverage excludes structures used in whole or part for business purposes.” Id. at 373. In breach of this provision, the insured plaintiff used the building, a garage, in connection with his furniture upholstery business, but asserted that such use was known to the insurer, resulting in waiver. Id. at 373-74. The insurer argued that the policy exclusion was a “matter of coverage” that could not be expanded by waiver or estoppel as a matter of law. Id. at 374.
On appeal from summary judgment in favor of the insurer, the North Carolina Court of Appeals reasoned that waiver and estoppel “properly apply” to the business use exclusion “since the property itself, an appurtenant structure, and the risk, loss due to fire, [were] already within the coverage of the policy.” Durham, 310 S.E.2d at 376. Thus, the risk of loss to the covered property due to fire was an “accepted risk” subject to forfeiture, rather than an “excepted risk” immune from waiver:
The distinction between an accepted risk to be defeated by conditions set forth in the policy and an excepted risk is clear, and it is logical to hold that it takes a new contract to cover an excepted risk. By way of illustration: A. has a plantation on which there are 10 buildings. All are covered by a policy of insurance, but the policy provides that, in case A. shall store certain inflammable materials in any of the houses, then the insurance on that building shall instantly cease. That is an assumed risk, which will be void upon a condition subsequent. B. has a plantation upon which there are 10 buildings; 9 of them are covered by a policy of insurance. Building No. 10 is excluded from the policy. It is entirely logical to hold that it takes a new contract to include insurance on B.’s No. 10, but not on A.’s No. 10.
Id. (citation omitted); accord United States Fid. & Guar. Co., 458 S.E.2d at 739.
Applying this distinction between accepted and excepted risk, the North Carolina Court of Appeals determined that using the garage for business purposes did not create an entirely new risk. Rather, such use “enhance[d] a risk already assumed by the insurer” — namely, the risk of fire destroying a covered structure. Durham, 310 S.E.2d at 376. Moreover, observed the court, “conditions regarding permissible or prohibited uses to which the property may be put are clearly inserted in the policy for the benefit of the insurer and therefore may properly be waived by it or its authorized agent.” Id. at 376-77. Accordingly, the court held that the insurer could waive the policy provision excluding coverage for business use. Id. at 377.
Turning to the facts at issue here, the relevant part of the fire protective safeguards endorsement states:
A. The following is added to the COMMERCIAL PROPERTY CONDITIONS:
PROTECTIVE SAFEGUARDS
1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the [schedule above.
J.A. 113. The protective safeguards schedule specifies that “ALL UTILITIES MUST REMAIN ON AND FUNCTIONING.” J.A. 113. Further, the fire protective safeguards endorsement adds the following language to the exclusions section of the policy:
*162 We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:
1. Knew of any suspension, malfunction or impairment in any protective safeguard listed in the [schedule above and failed to notify [Colony] of that fact;
2. Failed to maintain any protective safeguard listed in the [schedule above in complete working order[.]
J.A. 114.
There is no dispute that the policy issued by Colony expressly insured the 501 building against the risk of loss due to fire. As such, the loss that occurred was contemplated by the parties and encompassed by the policy. See Durham, 310 S.E.2d at 376 (broadly viewing the risk of loss to property by fire as covered, notwithstanding a business use exclusion). By requiring Defendants to maintain functioning utilities, the fire protective safeguards endorsement limited Colony’s exposure to risk it had already “accepted” — namely, risk of loss to the 501 building posed by fire. Id.
Consequently, we agree with the district court that “applying the doctrines of waiver/estoppel to the conditions at issue in this case would not expand the [p]olicy to cover risks not currently contemplated by that agreement — i.e., that fire may destroy the subject property.” J.A. 323. Accordingly, the district court did not err by submitting the issues of waiver and estoppel to the jury. And Colony’s arguments to the contrary are unavailing.
Colony also argues that, under United Capitol Ins. Co. v. Kapiloff, waiver did not apply as a matter of law because insufficient time had passed between Colony’s receipt of the inspection report and the fire. Again, we disagree.
First and foremost, Kapiloff, on which Colony’s argument heavily relies, required us to apply Maryland, not North Carolina, law. 155 F.3d 488 (4th Cir.1998). “No one doubts that a federal court called upon to adjudicate a state law claim in the diversity jurisdiction must apply the relevant state law in determining the substantive rights and duties of the parties .... ” Auer v. Kawasaki Motors Corp., U.S.A., 830 F.2d 535, 537 (4th Cir.1987) (en banc). Here, that relevant state law is North Carolina’s.[3]
Turning, then, to North Carolina law, “[w]aiver by an insurer of a forfeiture provision in an insurance policy requires (1) ‘knowledge on the part of the insurer of the pertinent facts,’ ..., and (2) ‘conduct thereafter inconsistent with an intention to enforce the condition’ ....” Mabry v. Nationwide Mut. Fire Ins. Co., 108 N.CApp. 37, 422 S.E.2d 332, 334 (1992) (quoting Gouldin v. Inter-Ocean Ins. Co., 248 N.C. 161, 102 S.E.2d 846, 849 (1958)). “When the evidence is sufficient to justify, but not require, a finding of waiver on the part of the insurer, then the issue of waiver is one to be • determined by the jury.” Id. (citing Gouldin, 102 S.E.2d at 851 (because the evidence of waiver was “susceptible of diverse inferences, it is improper for the presiding judge to give the jury a peremptory instruction”); and Brandon, 271 S.E.2d at 385 (noting that “the evidence in this case is sufficient to permit, but not compel, a jury to find that defendant, by words or conduct, waived the requirement of proofs of loss [and][t]he defendant’s evidence does not, as a matter of law, compel a contrary conclusion” and *163 thus “holding] that the issue of waiver should have been submitted to the jury”)).
Here, sufficient evidence existed for a reasonable jury to determine that Colony had “ ‘knowledge ... of the pertinent facts.’ ” Mabry, 422 S.E.2d at 334 (quoting Gouldin, 102 S.E.2d at 849). The inspection paid for by Defendants and conducted by Colony’s independent vendor revealed that the utilities were off at the 501 building, in contravention of the fire protective safeguards endorsement. Colony received this information from Safety Resources on April 21, 2010, approximately four weeks before the May 18, 2010 fire. And in North Carolina, “an insurance company is presumed to be cognizant of data in the official files of the company[.]” Gouldin, 102 S.E.2d at 849.
Further, sufficient evidence existed for a reasonable jury to determine that Colony engaged in “‘conduct thereafter inconsistent with an intention to enforce the condition.’ ” Mabry, 422 S.E.2d at 334 (quoting Gouldin, 102 S.E.2d at 849). Although Colony knew for weeks that the utilities were off, it neither informed Defendants of the violation nor took steps to cancel the policy. See Faircloth v. Ohio Farmers Ins. Co., 253 N.C. 522, 117 S.E.2d 404, 408-09 (1960) (“Equitably, if [the insurer] did not desire to carry the risk longer, because of the [breach of the policy conditions], it ought, in fair dealing, to have returned the unearned premium, and rescinded the insurance contract, so that plaintiff could have known he no longer was protected thereby and would have been afforded an opportunity to obtain a new policy from another agent.”). Instead, Colony confirmed coverage by issuing a mortgagee endorsement on April 22, 2010, and a loss payee endorsement on May 6, 2010, naming Randolph Bank as a mortgagee and loss payee on the policy.[4]
Moreover, testimony by Colony’s underwriter, Roseanne Gauthier, contradicts Colony’s assertion that the time period between receipt of the inspection report and the fire was inadequate to permit a finding of waiver. Gauthier testified that if she had reviewed the inspection report on April 21, 2010, when she received it, she would have “immediately” taken steps to cancel the policy. J.A. 1053.
North Carolina’s highest court has underscored that forfeiture “is not imposed as a penalty for making a false statement, which the insurer may invoke at his pleasure at any time, regardless of its own antecedent conduct. It is based on the principle that the insurer has been misled to its damage.” Hicks v. Home Sec. Life Ins. Co., 226 N.C. 614, 39 S.E.2d 914, 916 (1946). Crucially, however, an insurer “is not misled when it knows the facts; and when that knowledge exists or is acquired, it becomes the right and the duty of the insurer”, to act. Id. at 916-17. And a failure to do so “will operate.as a waiver.” Id.[5]
*164 Based on the proffered evidence and the pertinent North Carolina law, a reasonable jury could determine that Colony was not misled because it knew the facts, and that Colony had the right and the duty to act but failed to do so. Accordingly, we must agree with the district court that we “cannot say that the 27 days between the time Colony received the inspection report and the fire was insufficient, as a matter of law, for Colony to take action on the inspection as provided — especially in light of testimony that had the inspection been reviewed, immediate action would have occurred.” J.A. 328. The district court therefore properly submitted the waiver issue to the jury and did not err in instructing the jury that it could find waiver. And “we are constrained to affirm the jury verdict.” Lack, 240 F.3d at 259.
In sum, we conclude, based on North Carolina law, that the fire protective safeguards endorsement set forth in Colony’s policy is a provision of forfeiture subject to waiver and estoppel, that the issue was properly submitted to the jury, and that there existed “sufficient evidence for a reasonable jury to have found in [Defendants’] favor, [such that] we are constrained to affirm the jury verdict.” Lack, 240 F.3d at 259.
B.
Next, Colony contends that it is entitled to judgment as a matter of law because the jury determined that there was a material misrepresentation on the insurance application regarding whether heat and power would be on at the 501 building. Although Colony correctly notes that a material misrepresentation on an insurance application may forfeit coverage, see Gore v. Assurance Co. of Am., 208 N.CApp. 239, 704 S.E.2d 6, 12 (2010), waiver and estoppel may overcome a material misrepresentation, and such a question is for a jury to resolve. See, e.g., Cullen v. Valley Forge Life Ins. Co., 161 N.CApp. 570, 589 S.E.2d 423, 428 (2003). Accordingly, the district court did not err in allowing the jury to decide whether Colony had waived its right to rescind the policy, notwithstanding the misrepresentation on the application.[6]
III.
We have reviewed and summarily reject all of Colony’s arguments. The judgment of the district court is therefore

AFFIRMED.

. Colony did not pursue any post-verdict motions under Rule 50(b) or Rule 59. As a result, Colony may not challenge the sufficiency of the evidence supporting the jury's verdict. Belk, Inc. v. Meyer Corp., 679 F.3d 146, 154-55 (4th Cir.2012).

. Unlike other states within our circuit, there is no mechanism for certifying questions to the Supreme Court of North Carolina. See SunTrust Bank, N.A. v. Macky, 669 F.3d 177, 182 n. * (4th Cir.2012).

. The dissenting opinion, too, focuses on Kapiloff. Undoubtedly, that opinion includes some broad statements and few citations, as the dissent notes. Those stylistic choices do not, however, change the fact that “[t]here is no federal general common law[,]” Erie, 304 U.S. at 78, 58 S.Ct. 817, and that North Carolina law governs this dispute.

. The dissent cites Nelson v. Hartford Underwriters Ins. Co., 177 N.C.App. 595, 630 S.E.2d 221 (2006), for the notion that "only a few weeks” provides an insurer with little time to affirm or deny coverage. Id. at 233. Notably, however, at issue in Nelson was whether the insurer’s failure to make a coverage determination within nineteen days of receiving a reinvestigation report of a previously-denied claim constituted an unfair and deceptive trade practice. Id. The facts and issues in play in Nelson have little in common with, and shed little light on, those before us here.

. We concern ourselves neither with homogenizing state laws for fear that insurance companies will otherwise need to "operate drastically differently across state lines” nor with "the day-to-day realities of the business.” Post at 169. Instead, we stick to our business, which is using North Carolina substantive law to decide the issues presented by this appeal.

. Not least given our resolution of the issues above, we reject Colony’s arguments as regards Randolph Bank, including Randolph Bank’s status as an innocent mortgagee.