ROBERT E. COX v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

(Filed 8 April, 1936.)

1. **Appeal and Error B b—**

An appeal will be determined in accordance with the theory of trial in the lower court.

2. **Insurance P b—Conflicting evidence on question of insured's disclosure of facts to insurer's agents held to raise issue for jury.**

Insured offered evidence, principally his own testimony, to the effect that he disclosed previous illnesses and the names of physicians who had treated him to insurer's soliciting agent and to insurer's medical examiner, that insurer's medical examiner tested him in regard to his previous ailments and pronounced him all right, and stated he would not put all the information down because it was immaterial. Insurer offered evidence that insured's application failed to disclose material facts, and offered testimony, principally that of its medical examiner, to the effect that insured did not disclose such information either to the soliciting agent or to the medical examiner, and that no test as to the prior ailments was made. *Held:* The conflicting evidence raised an issue of fact for the determination of the jury.

**3. Insurance K a—Knowledge of local agent is imputed to insurer when agent does not participate in fraud, and constitutes waiver or estoppel.**

The jury found from conflicting evidence that insured disclosed all facts material to the risk to insurer's soliciting agent and to insurer's medical examiner. There was no suggestion that insurer's agents participated in the alleged fraud, or that the information was not received by them in the scope of their duties. *Held:* The knowledge of insurer's local agents at the inception of the policy is imputed to insurer, even though the policy contains a stipulation to the contrary, and insurer will not be allowed to avoid the policy for the very facts so disclosed to its local agents, such imputed knowledge constituting either a waiver or an estoppel.

APPEAL by the defendant from *Cowper, Special Judge,* at March Term, 1935, of WAYNE. No error.

This is a civil action, wherein the plaintiff alleged that the defendant, on 14 March, 1929, issued to him two life insurance policies providing for suspension of payment of premiums and certain monthly cash benefits to the insured in the event of his total and permanent disability; and that the premiums were paid and the policies were in full force and effect on 1 December, 1931, when the plaintiff became totally and permanently disabled within the meaning of the policies.

The defendant made answer and admitted the issuance of the policies with total and permanent disability provisions, but denied the plaintiff was disabled as alleged, and for a further defense averred that the total and permanent disability provisions in said policies were void for the reason that the plaintiff's application therefor contained false representations and concealments, (1) as to the receipt by him of insurance benefits for injury or illness, (2) as to other illnesses or injuries suffered by him, and (3) as to the physicians by whom he had been treated during the preceding five years.

The plaintiff filed reply in which he alleged that if the application for disability insurance signed by him failed to contain a full and correct statement of his former illnesses and injuries, and of the physicians who had treated him, such failure was due to the omission of the medical examiner of the defendant to record all the information given him, since at the time said application was prepared by said examiner the plaintiff made to said examiner a full and correct statement of all illnesses and injuries suffered by him and of the physicians who had treated him during the preceding five years, and that such omissions as were made in the applications were known to the defendant at the time the policies were delivered.

The issues submitted to and the answers made by the jury were as follows:

"1. Did the plaintiff, on or about 1 December, 1931, become totally and permanently disabled, as defined in the policy? Answer: 'Yes.'

"2. Has such disability continued and existed continuously to the present time? Answer: 'Yes.'

"3. Did the plaintiff Robert E. Cox untruthfully represent in his application for the insurance policies sued on that he had never received any insurance benefit or indemnity for any injury or illness? Answer: 'No.'

"4. Did the plaintiff untruthfully represent in his application for the insurance policies that he had had no other illness or injury except the following: Treatment of the right leg 1923, tonsilectomy 1927, influenza 1928, and bronchitis 1928? Answer: 'No.'

"5. Did the plaintiff untruthfully represent in his application for the insurance policies that he had consulted or been treated by no physician or practitioner during the preceding five years except Dr. D. J. Rose? Answer: 'No.'"

There appears in the record the following agreement: "It was agreed between the parties that if the jury shall answer the issues in such manner that the plaintiff will be entitled to any sum, that the court or judge may find from the evidence the amount so due the plaintiff for disability and return of premiums."

The court entered judgment to the effect that "the plaintiff recover of the defendant the sum of eighteen hundred eighty-two and 50/100 ($1,882.50) dollars, with interest on $382.50 thereof from the first day of October, 1932, and interest on $1,400.00 thereof from the first day of August, 1932, together with the costs of this action, to be taxed by the clerk," . . . and that "the contract of insurance issued by the defendant to the plaintiff and being Policy No. 7638016, and the contract of insurance issued by the defendant to the plaintiff and being Policy No. 7638017, are valid and binding obligations on the part of said defendant and are now in full force and effect." From this judgment the defendant appealed, assigning errors.

*Dickinson & Bland, Julian T. Gaskill, Kenneth C. Royall,* and *Joe C. Eagles, Jr., for plaintiff, appellee.*

*Langston, Allen & Taylor* and *S. Brown Shepherd for defendant, appellant.*

SCHENCK, J. The exceptions relating to the first and second issues do not seem to be very strongly urged in the appellant's brief, and we find no reversible error presented by them. The third issue was answered by consent. The controversy centers upon the fourth and fifth issues.

Under its exceptions to the court's refusal to grant its motions for judgment as of nonsuit, and to the court's refusal to give requested peremptory instructions as to the fourth and fifth issues, the defendant

takes the position that under all of the evidence it was entitled to a
judgment canceling the total and permanent disability clause of the
policies in suit.

From the issues submitted, the evidence offered by the defendant, and
the charge of the court, it clearly appears that the case was tried in the
Superior Court upon the theory that the disability clause in the policies
in suit was void for reason that the plaintiff, the insured, made false
representations and concealments in his application to the defendant, the
insurer, for such policies. Having been tried upon this theory in the
Superior Court, and no objection having been made by either party to
the issues submitted, the case must be interpreted by us in the light of
such theory. *Edgerton v. Perkins,* 200 N. C., 650.

Upon the fourth issue the defendant offered evidence tending to prove
that the plaintiff had other illnesses and injuries than those mentioned,
namely: "Treatment of the right leg 1923, tonsilectomy 1927, influenza
1928, and bronchitis 1928," and the plaintiff did not controvert that he
had had some other illnesses and injuries. However, the plaintiff offered
evidence, his own testimony principally, that he had made known to both
the soliciting agent and to the medical examiner of the defendant, who
filled out the application, all of the illnesses and injuries that he had
suffered, and had told such examiner that he had had trouble while in
the army with a sprained ankle and afterwards had an attack of "sciatica
nerve trouble," and had recently been to the Veterans' Bureau in Char-
lotte and had it checked; that at the time of the examination the ex-
aminer had him to hop to the back of the office on his right foot and
back on his left foot, and the examiner remarked: "I think that is all
right"; that during the examination he was stripped and the fact that
one of his legs was smaller than the other was apparent; and that he
remembered very distinctly that the medical examiner, when the various
illnesses and injuries the plaintiff had suffered were being related to him,
said: "There ain't no need putting all that junk down, because it is
immaterial." The defendant offered evidence, the testimony of the
the medical examiner principally, that the plaintiff did not inform him
of any illnesses or injuries not written in the application, and did not
tell him of any trouble he had had in the army or of any visit to the
Veterans' Bureau, and that the plaintiff was not stripped for the exami-
nation and was not required to hop across the office, and did not make
known or exhibit the fact that one of his legs was smaller than the
other; and that the medical examiner had no information as to the plain-
tiff's past health record except that given to him by the plaintiff. This
sharply conflicting evidence raised a clear issue of fact for the jury and
the jury found for the plaintiff.

A similar issue of fact was presented under the fifth issue. The plaintiff's evidence tended to prove that he gave to the medical examiner of the defendant the names of all other physicians than Dr. R. J. Rose, who had treated him during the preceding five years, and that the medical examiner of the defendant failed to write such names in the application. The defendant's evidence tended to show that while other physicians had treated the plaintiff for other maladies in the preceding five years, no other physicians or maladies than those mentioned in the application and issues were given to its medical examiner by the plaintiff. The issue of fact raised by this conflicting evidence was likewise found for the plaintiff.

The answers to the issues, when taken with the agreement in the record, constitute a verdict that, under the decisions of this Court, support the judgment entered.

It is a well settled principle in this jurisdiction that an insurance company cannot avoid liability on a policy issued by it by reason of any facts which were known to it at the time the policy was delivered, and that any knowledge of an agent or representative, while acting in the scope of the powers entrusted to him, will, in the absence of fraud or collusion between the insured and the agent or representative, be imputed to the company, though the policy contains a stipulation to the contrary. *Follette v. Accident Asso.,* 110 N. C., 377; *Fishblate v. Fidelity Co.,* 140 N. C., 589; *Short v. Life Insurance Co.,* 194 N. C., 649; *Laughinghouse v. Insurance Co.,* 200 N. C., 434; *Colson v. Assurance Co.,* 207 N. C., 581; *Barnes v. Assurance Society,* 204 N. C., 800, and cases there cited.

There is no suggestion in this case that there was any collusion between the insured and the medical examiner, or that the medical examiner was not acting in the scope of his employment in making the examination and in writing the answers to the interrogatories contained in the application, since said examiner was introduced as a witness for the defendant and his testimony is its principal reliance. There is also no evidence or suggestion in the record of any collusion between the insured and the soliciting agent. The only evidence relative to the information possessed by the latter was the testimony of the former. The soliciting agent was not called as a witness.

What is said in *Follette v. Accident Association, supra,* is applicable to this case and renders unnecessary any discussion by us of the questions relative to waiver and estoppel raised in the briefs. In that case *Judge Avery* writes: "It is not material whether we say that the conduct of the local agent amounts to a waiver or works an estoppel on the insurer, as the authorities are in conflict upon the point. . . . Certain it is that in such cases the knowledge of the agent is imputed to the principal, and to deliver a policy with a full knowledge of facts upon which its

validity may be disputed, and then insist upon those facts as a ground of avoidance, is to attempt a fraud."

We have examined the exceptive assignments of error which relate to the admission and exclusion of evidence and to the charge of the court and find no reversible error.

No error.