MAGGIE HEILIG v. HOME SECURITY LIFE INSURANCE COMPANY.

(Filed 4 November, 1942.)

**1. Insurance § 31c—**

An insurance company cannot avoid liability on its policy by reason of any facts known to it at the time the policy was delivered, and any knowledge of the company's agent, while acting in the scope of his authority, will, in the absence of fraud or collusion, be imputed to the company, though the policy contains a stipulation to the contrary.

**2. Trial § 22a: Appeal and Error § 40e—**

On motion to nonsuit, the plaintiff is entitled to the benefit of every fact and inference of fact, pertaining to the issues involved, which may reasonably be deduced from the evidence.

**3. Trial § 22b: Insurance § 31c—**

In an action to recover on a life insurance policy, motion for nonsuit properly denied, where plaintiff's evidence showed that the policy was issued by the company's agent on an application, filled out by the agent, and signed by insured's father, who answered truthfully all questions asked and answers to other questions were inserted by the agent without the knowledge of the father, there being no evidence of fraud or collusion.

**4. Trial § 7—**

The decision of the trial judge on the question of the concluding argument is final and not reviewable.

APPEAL by defendant from *Nettles, J.,* at February Term, 1942, of ROWAN.

Civil action to collect the proceeds of an insurance policy issued by defendant on the life of Paul Heilig, payable to Maggie Heilig, beneficiary.

It is admitted the policy involved was issued 25 March, 1940, that the insured died 14 May, 1941, and the premiums were paid by Maggie Heilig, as required under the terms of the policy. However, the defendant denies the policy was ever in force, alleging that the insured perpetrated a fraud on the defendant in the issuance of the policy, in that certain answers in the application for the insurance were false.

O. L. Everhart, agent of the defendant, testified that on 14 March, 1940, he obtained from Paul Heilig, at the home of his parents in Spencer, N. C., an application for the policy of insurance now in controversy. He further testified that he asked the insured all the questions in the application and wrote the answers for him; and, that the insured signed the application in his presence and he witnessed the applicant's signature.

HEILIG v. INSURANCE CO.

All the answers to questions in the application relative to any previous hospitalization, treatment by a physician within the past twelve months, and whether or not the applicant had suffered from any of the diseases enumerated therein, were answered in the negative.

The evidence discloses the insured had received treatment in a New York hospital within twelve months from the date of the application for this insurance, had been under the care of a physician within said period and died of pulmonary tuberculosis on 14 May, 1941.

The evidence of John Heilig, for the plaintiff, was substantially as follows: That he had a conversation with Mr. Everhart on 14 March, 1940, relative to some insurance on the life of his son, Paul Heilig. The conversation took place at his home in Spencer, N. C., in the presence of his wife, Maggie Heilig. He told Mr. Everhart that he wanted to take out some insurance on Paul. Mr. Everhart asked him if he was in good health, and he told him the last letter he had from him said he was well. Mr. Everhart said "All right." He then inquired as to Paul Heilig's age, where he was born, whether married or single, and who was to be named beneficiary. "He asked me no other questions about the condition of Paul's health. He asked me where Paul was and I told him in New York. . . . I did not tell him that Paul Heilig had been in the hospital in New York. I did not know it myself. I told him the last letter we got from Paul he said he was well." This witness testified he signed Paul Heilig's name to the application. He further testified Paul Heilig came home in April, 1940. It had been three years since he had seen his son. He had heard from him sometimes once a month and sometimes once in two or three months.

The testimony of Maggie Heilig was substantially the same as that of her husband.

The jury answered the issues in favor of the plaintiff. From judgment entered thereon, the defendant excepts and appeals, assigning error.

*John C. Kesler and Kerr Craige Ramsay for plaintiff.*
*C. P. Barringer and H. L. Mangum for defendant.*

DENNY, J. The first assignment of error is to the refusal of his Honor to sustain defendant's motion for judgment as of nonsuit. "On motion to nonsuit, the plaintiff is entitled to the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence." *Gorham v. Ins. Co.,* 214 N. C., 526, 200 S. E., 5.

The evidence offered by the plaintiff was properly submitted to the jury. The evidence of the plaintiff and defendant was conflicting, but the jury adopted the plaintiff's version as to the facts and circumstances

under which the policy of insurance was issued and answered the issues accordingly. It appears from the plaintiff's evidence and now supported by the verdict of the jury, that the agent asked the father of the applicant only the following questions: (1) Paul Heilig's age; (2) where he was born; (3) the condition of his health; (4) married or single; (5) who was to be named beneficiary; and (6) Paul Heilig's address. The answers to other questions, if inserted by the agent, without the knowledge of the applicant, in the absence of fraud or collusion between the insured and the agent, will not vitiate the policy of insurance issued pursuant to the information contained therein. *Cato v. Hospital Care Assn.,* 220 N. C., 479, 17 S. E. (2d), 671; *Cox v. Assurance Society,* 209 N. C., 778, 185 S. E., 12.

There is no suggestion or allegation that there was any collusion between the plaintiff or the insured and the agent of the company, or that the agent was not acting in the scope of his employment when he obtained the application for this insurance. Therefore, the jury having found that the insured did not make any false representations in the application for the insurance in controversy, the defendant is bound by the contract.

In *Cox v. Assurance Society, supra,* this Court said: "It is a well settled principle in this jurisdiction that an insurance company cannot avoid liability on a policy issued by it by reason of any facts which were known to it at the time the policy was delivered, and that any knowledge of an agent or representative, while acting in the scope of the powers entrusted to him, will, in the absence of fraud or collusion between the insured and the agent or representative, be imputed to the company, though the policy contains a stipulation to the contrary. *Follette v. Accident Assn.,* 110 N. C., 377; *Fishblate v. Fidelity Co.,* 140 N. C., 589; *Short v. Ins. Co.,* 194 N. C., 649; *Laughinghouse v. Ins. Co.,* 200 N. C., 434; *Colson v. Assurance Co.,* 207 N. C., 581; *Barnes v. Assurance Society,* 204 N. C., 800, and cases there cited."

The third assignment of error is to the refusal of the court to permit the defendant to have the concluding argument. The judge's decision on that question is final and not reviewable. Rule 6, Rules of Practice in the Superior Courts, 221 N. C., 574.

The remaining assignments of error are without merit.

In the judgment of the court below, we find

No error.