**Mona RUTHERFORD, Executrix of the Estate of Josephine McConnell Rutherford, Appellant,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellee.**

No. 76–1659.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1977.

Decided Aug. 24, 1977.

Russell P. Brannon, Asheville, N.C. (Van Winkle, Buck, Wall, Starnes, Hyde & Davis, Asheville, N.C., on brief), for appellant.

Landon H. Roberts, Asheville, N.C. (Roberts & Cogburn, Asheville, N.C., on brief), for appellee.

Before RUSSELL and WIDENER, Circuit Judges, and WYZANSKI, Senior District Judge.*

* United States District Court for the District of Massachusetts, sitting by designation.

WIDENER, Circuit Judge:

This is an action brought on a policy of life insurance.[1] Mona Rutherford sues as executrix of the estate of Josephine McConnell Rutherford, the beneficiary of an insurance policy issued by defendant John Hancock Mutual Life Insurance Company on the life of Claude V. Grose. Following the death of Grose on April 22, 1973, John Hancock refused to make payment on the policy on the ground that Grose had made material misrepresentations in his insurance application.

■ Plaintiff admits that the misrepresentations were made, but asserts that defendant is estopped from relying upon them to avoid the policy, and that defendant has effectively waived the defense of material misrepresentation. The bases of these claims are twofold: first, that John Hancock's agent, at the time the insurance application was filled out, made a statement to another in Grose's presence to the effect that disclosure of a prior hospital confinement for treatment of alcoholism was "immaterial" in completing the application; and, second, that waiver resulted from issuance of the policy by John Hancock with knowledge of sufficient facts to put it on inquiry as to the truth of Grose's prior history of treatment for alcoholism. The issues were raised as questions as to whether or not the district court properly excluded evidence of the insurance agent's statement, and properly granted defendant's motion for a directed verdict at the conclusion of all the evidence. We look to the law of North Carolina to resolve these issues,[2] *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and affirm the judgment of the district court.

Question No. 4 on the application form completed by Grose inquired, "Within the past 3 years, have you or any eligible dependent to be insured had an examination, treatment, or surgery by any physician, surgeon, or practitioner or been confined in any clinic hospital, or sanitarium?" Grose answered "Yes," but in the space requiring elaboration simply stated, "Routine Physical, Good Health," and provided the name of the treating physician and the date, July 1972. In fact, within the previous three years Grose had undergone three hospital confinements for treatment of alcoholism, the longest of which had lasted six weeks. And the treatment of July 1972, which the application represented to be a "routine physical" with a bill of "good health," was in fact a five day hospital stay with a diagnosis of "Acute alcoholic intoxication" and "Chronic alcoholic addiction."

■ The district court excluded testimony offered by the plaintiff of one Keith Thomas, that Thomas, in the presence of Grose, had asked defendant's agent whether, in filling out the same application form,[3] prior treatment at an alcoholic rehabilitation center should be indicated, and that the agent had characterized such information as "immaterial." This evidence was properly excluded, because it consists of an oral representation contradicting the express provisions of the insurance application, which was made part of the policy. The application contained a specific provision that, "[t]he foregoing statements (1 through 4) are true and complete, and that every occasion and instance as to each item answered 'yes' has been disclosed."

1. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

2. While the group insurance policy involved here contained a provision that the law of Missouri would govern the contract, the briefs of both parties in this appeal rely on North Carolina law, which would ordinarily apply under *Erie Railroad* in this diversity case. Neither side cites a single Missouri authority; and we assume that the parties mutually assent to the application of North Carolina law, especially since no choice of law issue is raised by either side on appeal.

3. Grose and Thomas were both employees of Rockwool Insulating Company, and were both covered under the same group life insurance policy issued by John Hancock to American Employer's Council Trust Fund. Thus, both men were present when the members of the group completed their applications with the assistance of defendant's agent.

North Carolina law is clear on this point. Evidence of prior parol representations will not be received to alter the terms of a written insurance contract. The writing is conclusively presumed to contain the full agreement of the parties, absent allegations of fraud or mistake, neither of which is alleged to be present here. *Cavin's Inc. v. Atlantic Mutual Life Ins. Co.,* 27 N.C. App. 698, 220 S.E.2d 403 (1975); *Davenport v. Travelers Indemnity Co.,* 283 N.C. 234, 195 S.E.2d 529, 534 (1973); *Floars v. Aetna Life Ins. Co.,* 144 N.C. 232, 56 S.E. 915 (1907). Moreover, under North Carolina law written questions relating to health and written answers thereto in a life insurance application are deemed material as a matter of law, *Rhinehardt v. North Carolina Mutual Life Ins. Co.,* 254 N.C. 671, 119 S.E.2d 614 (1961).

Plaintiff's waiver argument presents a much closer question, particularly in view of the district court's grant of a directed verdict for the defendant. John Hancock's agent met with Grose and a number of his fellow employees to discuss a group life insurance policy at the Flynn Home in Asheville, North Carolina, a home for ex-alcoholics of which Gross was assistant manager. There is testimony in the record from which a jury could have found that, as a result of remarks made, the agent knew or should have known that several of the prospective applicants present, including Grose, had a history of alcoholism. This occurred prior to the issuance of Grose's policy.

The pertinent North Carolina law is stated as follows. An insurance company cannot avoid liability on a policy on the basis of facts known to it at the time the policy was delivered. *Cox v. Equitable Life Ins. Co.,* 209 N.C. 778, 185 S.E. 12 (1936). And, absent fraud or collusion, any knowledge acquired by an agent while acting within the scope of his authority is imputed to the principal. *Thomas-Yelverton Co. v. State Cap. Life Ins. Co.,* 238 N.C. 278, 77 S.E.2d 692 (1953). Thus, the rule in North Carolina is stated that, "[k]nowledge of facts which the insurer has or should have had constitutes notice of whatever an inquiry would have disclosed and is binding on the insurer. The rule applies to insurance companies that whatever puts a person on inquiry amounts in law to 'notice' of such facts as an inquiry pursued with ordinary diligence and understanding would have disclosed." *Gouldin v. Inter-Ocean Ins. Co.,* 248 N.C. 161, 102 S.E.2d 846, 849 (1958).

Applying these principles to the case at hand, we emphasize that we do not equate general knowledge of an alcoholic condition with specific knowledge of a condition as severe as that of Grose, who had, in the recent past, required hospital confinement on three separate occasions, one of them for a period as long as six weeks. It is not inconsistent that an insurance company might not broadly exclude from coverage all past alcoholics, but might refuse to insure an individual with Grose's record of hospitalization. The questionnaire on its face admits of this conclusion, and nothing in the record serves to contradict it. It seems apparent that, had the doctor listed by Grose on the application been contacted by John Hancock, Grose's prior hospitalizations would have been revealed. Nevertheless, we do not think that the facts of this case can justify the imposition of such a duty on John Hancock. In the *Cox* and *Gouldin* cases, supra, insurance companies took action inconsistent with forfeiture at a time after either the actual information or information the court held sufficient to place the insurer on inquiry and not disclosed on the applications had been revealed to them. In the present case, the facts of or surrounding the three hospitalizations were never revealed to the insurer; the false application was entirely innocuous facially and, as we have said, mere knowledge of Grose's prior alcoholism was insufficient in and of itself to result in a waiver by the company as a matter of law.

Plaintiff urges that one simple telephone call to the treating physicians disclosed on the application would have revealed Grose's true medical history, but the critical factor upon which a duty of further inquiry must be based is not simply the

means to inquire, but the existence of a reason for doing so. The means to conduct an investigation obviously exist in almost every case, but even insurance companies could hardly operate if they were required as a matter of law to look behind the face of every innocent-appearing application. Here, there was nothing on the face of the application and nothing known to John Hancock that should have caused the company to doubt the accuracy of Grose's answer to question 4. All Grose revealed was that he had had a "routine physical" with a diagnosis of "good health." In the face of this disclosure, it would be a strained result indeed that would place the burden not on the applicant to reveal the truth, but on the insurer to discover it.

While an alternate ground of the decision of this court in *Prudential Ins. Co. v. Barden,* 424 F.2d 1006 (4th Cir. 1970), could be read as imposing broader duties on insurers than we suggest here, we do not regard that decision as dispositive of the present case for two reasons. First. The primary holding in *Barden* was that no misrepresentation had in fact been made by the insured, in stark contrast to the situation here. Second. A holding that such a duty existed in one case does not compel a similar result in an entirely different factual setting. In all events, in *Barden* the court held, with respect to the duty to inquire, that when the company accepted the application, it was perfectly plain that all of the questions had not been answered as fully as the company thought requisite, again in contrast to the situation here.

We therefore conclude that no basis existed for imposing upon John Hancock an affirmative duty of inquiring behind the face of Claude Grose's insurance application.

The judgment of the district court is accordingly

*AFFIRMED.*