NORTHERN NATIONAL LIFE INSURANCE COMPANY v. LACY J. MILLER MACHINE COMPANY, INC.

No. 8222SC919

(Filed 2 August 1983)

Insurance § 19.1— life insurance—misrepresentations in application by insurance broker—estoppel of insurer

Plaintiff insurer was estopped to assert that a life insurance policy was void because of false statements in the application that the insured was an active and full-time employee of the corporate beneficiary at the time the policy became effective where the evidence supported the jury's findings that the false statements were inserted in the application by an insurance broker without the actual or implied knowledge of defendant or the insured and that the broker "solicited" the insurance application and was thus an agent of plaintiff insurer pursuant to G.S. 58-197.

Judge HEDRICK dissenting.

APPEAL by plaintiff from *Washington, Judge.* Judgment entered 19 March 1982 in DAVIDSON County Superior Court. Heard in the Court of Appeals 9 June 1983.

Plaintiff, Northern National Life Insurance Company, brought this action seeking to cancel a $100,000.00 policy of life insurance issued by it on the life of Lacy J. Miller wherein defendant, Lacy J. Miller Machine Company, Inc., was to pay the premiums and was the named beneficiary. Plaintiff asserted as grounds for the requested relief that the application for the policy contained false statements of facts material to the status of Lacy

J. Miller, the insured, and that had the true facts requested on the application been disclosed, the policy would not have been issued.

Defendant filed its answer and a counterclaim seeking enforcement of the policy. Defendant alleged that Roger C. Brooks, the plaintiff's agent who sold the policy, was aware of the true facts pertinent to the application for insurance, that plaintiff knew or should have known the true facts regarding the status of the insured and that plaintiff is estopped to assert that the false statements in the application are sufficiently material as to entitle plaintiff to rescind the contract.

Plaintiff filed a reply, denying defendant's essential allegations. After the pleadings were joined, plaintiff's motion for summary judgment was denied.

The case was tried before a jury and the evidence tended to show, in pertinent part, the following sequence of events.

In March of 1979, James T. Donley and Joseph T. Buie, minority shareholders, directors and officers in defendant corporation, informed Roger C. Brooks, an insurance broker affiliated with the Equitable Life Insurance Association and who had prior dealings with defendant corporation, that defendant was interested in obtaining insurance on the life of its corporate president, Miller.

In September of 1979, Brooks interviewed Miller and learned, *inter alia*, that he had heart trouble. Brooks obtained from Miller an application to Equitable for a $100,000.00 life insurance policy. Equitable declined to issue the requested policy. In September, Brooks succeeded in placing a group insurance policy for defendant company with Equitable. Brooks continued to look for additional insurance on the life of Miller.

In December of 1979 or early January of 1980, Brooks discovered that plaintiff had begun marketing a new multiple acceptance group plan wherein an employer could obtain insurance on the lives of ten of its important employees without the need for a physical examination of the insured. Brooks contacted either Buie or Donley, or both of them, and informed them about the plan. They told Brooks to find out more about the plan.

In December of 1979 or early January of 1980, Brooks learned that plaintiff's eligibility requirements included that the

insured not be known to be terminally ill and that the insured be actively engaged in the full-time pursuit of the duties of his employment.

Brooks knew that Miller was not at defendant's corporate headquarters on a full-time basis. He learned from a general agent of plaintiff that plaintiff would issue a policy as long as the insured was currently active in a decision-making capacity. Donley expressed concern to Brooks that Miller's health may cause plaintiff to refuse to insure him. Brooks responded that he would turn in the application and find out if plaintiff would accept the risk.

In late January or early February of 1980, Brooks obtained application forms from plaintiff and delivered them to an attorney for defendant. The application for Miller was returned to Brooks bearing the signature of Lacy J. Miller, but otherwise blank. Brooks filled out the Miller application. He supplied the requested information based on his knowledge from "prior dealings" with the company and his "personal knowledge, the best as [he, Brooks] knew." Brooks testified that in supplying the information requested on the application he relied upon (1) the information he had received from Miller in September when he interviewed Miller regarding the application to Equitable, (2) his conversations with Buie and Donley prior to mid-January and (3) information from corporate records or elsewhere.

The Miller application was dated 5 February 1980 and it was countersigned by Brooks as "licensed resident agent." The application, as filled in, stated that Miller was the corporate president, that he had suffered a heart attack in 1977, that he had public relations and office duties and that he was currently active and working full time. Brooks forwarded the application, along with a binder payment to plaintiff and plaintiff accepted the risk, issuing a policy effective 5 February 1980. Miller died on 13 May 1980.

As of the date of application, the information contained in the application regarding Miller's occupation, duties and active, full-time status was incorrect. On 22 January, a temporary restraining order was issued by the superior court, enjoining Miller from taking any action relating to the Lacy J. Miller Machine Company because of, *inter alia*, alleged neglect of his corporate duties. The

petition for the T.R.O. was filed by Joseph T. Buie, Jr., James T. Donley and Lacy J. Miller Machine Company as plaintiffs against Lacy J. Miller as defendant. The materials filed for the T.R.O. included sworn statements of Buie and Donley that Miller had been inactive and in neglect of his corporate duties and responsibilities since 1975. On 28 January 1980, Miller was removed as corporate president by the board of directors.

At the close of all the evidence, motions for directed verdict made by both plaintiff and defendant were denied. The jury returned the following special verdict:

1. Was Roger C. Brooks the agent of Lacy J. Miller Machine Co., Inc., in obtaining the insurance policy on the life of Lacy J. Miller?

ANSWER: No

2. Was there a false statement of a material fact in the application for insurance on the life of Lacy J. Miller?

ANSWER: Yes

3. Was Roger C. Brooks the agent of Northern National Life Insurance Company in obtaining the insurance policy on the life of Lacy J. Miller?

ANSWER: Yes

4. As such, did Roger C. Brooks know or have reason to know of a false statement of a material fact in the application for the insurance on the life of Lacy J. Miller?

ANSWER: Yes

5. Was a false statement of material fact inserted in the application by Roger C. Brooks without the actual or implied knowledge of the Lacy J. Miller Machine Co.?

ANSWER: Yes

Plaintiff moved for judgment N.O.V., which motion was denied. From judgment entered on the verdict, awarding defendant the full amount of coverage on the policy, plaintiff appealed.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Norman B. Smith and John Dusenbury, Jr.; and John T. Manning for plaintiff.*

*Wilson, Biesecker, Tripp & Sink, by Joe E. Biesecker; and House, Blanco & Osborn, P.A., by Lawrence U. McGee and John S. Harrison, for defendant.*

WELLS, Judge.

At the outset, we address plaintiff's contention raised at oral argument of this case that our decision in this case must be dictated by the decision of this Court in *Manhattan Life Insurance Company v. Lacy J. Miller Machine Company, Inc.,* 60 N.C. App. 155, 298 S.E. 2d 190 (1982), *disc. rev. denied,* 307 N.C. 697, 301 S.E. 2d 389 (1983). In *Manhattan,* a case similar to the present case, this Court affirmed the trial court's grant of plaintiff's motion for summary judgment. While we recognize that this case and *Manhattan* involve similar issues, we note that one important factual difference is apparent. In *Manhattan,* the application was signed both by Buie in his capacities as vice-president, secretary and treasurer of the corporate defendant, and by Miller. Moreover, *Manhattan* was a summary judgment case, and the scope of appellate review and questions presented on appeal were necessarily different than in the present case. In *Manhattan,* the Court did not address the issue of agency, as that issue relates to which of the parties in that case furnished the false information contained in the application. We do not believe that the decision in *Manhattan* is controlling on the issue presented in the present appeal.

It is proper to direct a verdict for the party with the burden of proof only if the evidence so clearly establishes the facts in issue that no reasonable inference to the contrary may be drawn. *Bank v. Burnette,* 297 N.C. 524, 256 S.E. 2d 388 (1979). It is generally held that a directed verdict for the party with the burden of proof is proper only if the credibility of the movant's evidence is "manifest as a matter of law." *Id.* Situations where the movant's evidence is sufficiently credible include:

(1) Where non-movant establishes proponent's case by admitting the truth of the basic facts upon which the claim of proponent rests.

Northern Nat'l Life Ins. v. Miller Machine Co.

(2) Where the controlling evidence is documentary and non-movant does not deny the authenticity or correctness of the documents.

(3) Where there are only latent doubts as to the credibility of oral testimony and the opposing party has "failed to point to specific areas of impeachment and contradictions."

*Id.* (Cites omitted.)

Plaintiff contends that the insurance policy on the life of Miller was void *ab initio.* "It is well established that an insurance company cannot avoid liability on a life insurance policy on the basis of facts known to it at the time the policy went into effect." *Willetts v. Insurance Corp.*, 45 N.C. App. 424, 263 S.E. 2d 300, *disc. rev. denied*, 300 N.C. 562, 270 S.E. 2d 116 (1980), *citing Cox v. Assurance Society*, 209 N.C. 778, 185 S.E. 12 (1936). Of course, the knowledge of or notice to an agent of an insurer is imputed to the insurer itself, absent collusion between the agent and the insured. *Cox v. Assurance Society, supra; Insurance Co. v. Grady*, 185 N.C. 348, 117 S.E. 289 (1923); *Buchanan v. Nationwide Life Insurance Co.*, 54 N.C. App. 263, 283 S.E. 2d 421 (1981). Moreover, an insurance company is deemed by law to have notice of facts that an inquiry pursued with ordinary diligence and understanding would have disclosed. *Gouldin v. Insurance Co.*, 248 N.C. 161, 102 S.E. 2d 846 (1958); *Willetts v. Insurance Corp., supra.*

A corollary to the above rules, applicable to the present case, is that when the agent of the insurance company answers questions for the applicant on an application for insurance, without the applicant having reason to know what answers the agent is supplying, the insurance company will be equitably estopped to rely on the falsity or inaccuracy supplied by its own agent in any effort to defeat liability on the policy. *See Heilig v. Insurance Co.*, 222 N.C. 231, 22 S.E. 2d 429 (1942); *Cato v. Hospital Care Association*, 220 N.C. 479, 17 S.E. 2d 671 (1941); *cf. Sauls v. Charlotte Liberty Mutual Insurance Co.*, 62 N.C. App. 533, 303 S.E. 2d 358 (1983).

It is well established that when the evidence raises a question of whether a misrepresentation in an application for insurance is attributable to the insured or the agent of the insurer

alone, the question must be resolved by the finder of fact. *See Chavis v. Insurance Co.*, 251 N.C. 849, 112 S.E. 2d 574 (1960); *Heilig v. Insurance Co.*, *supra; Cox v. Assurance Society*, *supra; Buchanan v. Nationwide Insurance Co.*, *supra.*

Applying these principles to the evidence in the present case, it becomes clear that a threshold issue in this case is whether there was sufficient evidence to submit to the jury the question of whether Brooks was an agent of plaintiff insurance company. Plaintiff, in its brief, concedes that the dispositive question presented in this appeal relates to who must bear responsibility for the false answers in Miller's application. It was for the jury to decide whether Brooks was an agent of plaintiff or defendant and whether defendant had either actual or implied knowledge of the false statements in the application, and we affirm the judgment of the trial court.

G.S. 58-197 provides that

A person who solicits an application for insurance upon the life of another, in any controversy relating thereto between the insured or his beneficiary and the company issuing a policy upon such application, is the agent of the company and not of the insured.

The statute thus establishes a conclusive presumption of an agency relationship between the agent and the insurance company once "solicitation" on the part of the agent is found.

The word "solicit" is not defined in the definition section of Chapter 58 of the General Statutes; nor does the term appear to have been authoritatively construed in the reported decisions of the appellate courts of this state. Its meaning must be discerned, therefore, by application of fundamental principles of statutory construction.

Two well-settled principles of statutory construction in this state are that the words in a statute are to be construed so as to further the intent of the legislature, *Commissioner of Insurance v. Automobile Rate Office*, 293 N.C. 365, 239 S.E. 2d 48 (1977), and that absent a special or technical definition or other clear indication to the contrary, words in a statute must be given their ordinary meaning. *Food Town Stores v. City of Salisbury*, 300 N.C. 21, 265 S.E. 2d 123 (1980). Generally the best indicia of legislative

intent are: the spirit, language and objectives of the act. *Savings & Loan League v. Credit Union Commission,* 302 N.C. 458, 276 S.E. 2d 404 (1981).

Clearly, G.S. 58-197 was enacted by the General Assembly as a protective measure for consumers of insurance services. Its import is obviously to expand the class of persons capable of binding insurers to enforceable insurance obligations, and to prevent insurers who obtain consideration from persons solicited on their behalf, from relying on the purportedly ultra vires actions of their agents to deny liability to beneficiaries.

Webster's Third New International Dictionary of the English Language, Unabridged 2169 (1976), in pertinent part, defines "solicit" as ". . . to approach with a request or plea (as in selling or begging) . . . to seek eagerly or actively . . . ."

The evidence in the present case tended to show that Brooks was in the business of selling insurance; that he frequented the corporate headquarters of defendant for the purpose of selling insurance; that, pursuant to a request, he found out about plaintiff's plan and suggested to defendant that the plan may meet its needs; that he delivered to defendant application forms and, eventually, issued insurance policies for plaintiff; that he forwarded the applications and binder payments from defendant to plaintiff; and that he was paid a commission by plaintiff on the policies he sold to defendant. This evidence was sufficient to permit the jury to find that Brooks solicited the application of the insured and was, therefore, an agent of plaintiff and not of defendant.

We note that there was abundant evidence which would have permitted, but did not require, the jury to find that defendant knew or should have known that Brooks supplied false information to plaintiff. The jury's verdict, in light of the jury instructions given, clearly indicates that the jury rejected this evidence favoring plaintiff and found that the misrepresentations were those of Brooks, acting as agent of plaintiff. Upon the verdict of the jury, plaintiff is estopped to assert the fraud of Brooks in its effort to defeat defendant's recovery under the insurance policy.

No error.

Judge PHILLIPS concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

While I do not necessarily agree with all that was said or unsaid in *Manhattan Life Ins. Co. v. Miller Machine Co.,* 60 N.C. App. 155, 298 S.E. 2d 190 (1982), *disc. rev. denied,* 307 N.C. 697, 301 S.E. 2d 389 (1983), I feel we are bound by the results in that case especially since our Supreme Court denied the petition to review this court's decision in that case.