WEBSTER ENTERPRISES, INC., AND WEBSTER CONSTRUCTION COMPANY, INC., PLAINTIFF-APPELLEES v. SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, DEFENDANT-APPELLANT

No. COA96-286

(Filed 7 January 1997)

**1. Pleadings § 19 (NCI4th)— admission in answer—inconsistent motion for summary judgment**

Summary judgment in favor of the plaintiff corporations was properly granted where defendant insurance company admitted in its answer that the losses plaintiffs suffered due to a fire were

covered by an insurance binder issued by defendant. Defendant failed to formally amend its answer but made a motion for summary judgment declaring the binder invalid at the time of the fire. Pursuant to N.C.G.S. § 1A-1, Rule 15, a party may amend its pleadings only by leave of court or by written consent of the adverse party; however, the mere filing of an inconsistent motion for summary judgment does not satisfy Rule 15.

**Am Jur 2d, Pleading §§ 174, 175, 306, 311, 312.**

2. **Insurance § 1235 (NCI4th)— directed verdict—denied— insurance binder—misrepresentation—jury**

Defendant's motion for directed verdict was properly denied by the trial court where the defendant's motion was based on alleged false and material misstatements knowingly made by plaintiffs in a fire insurance application where plaintiff insureds proffered evidence which supports a conclusion that any such misrepresentations were innocent. The jury verdict indicated that the plaintiffs did not wilfully conceal or misrepresent a material fact. If plaintiffs had made material misrepresentations, a jury must have decided whether the plaintiffs intended to commit fraud or a false swearing.

**Am Jur 2d, Insurance §§ 2009, 2014, 2017, 2025, 2029.**

3. **Insurance § 819 (NCI4th)— fire insurance—increase in hazard—agent's knowledge imputed to insurer**

The trial court correctly granted plaintiff insureds' motion for a directed verdict where defendant insurance company failed to carry its burden of proof by establishing there was an alteration in circumstances which materially and substantially increased the risk of insuring plaintiffs' warehouse against fire. Defendant claimed that plaintiffs' storage of flammable materials constituted an increased hazard or risk of fire. Knowledge by defendant's agent that fuel was stored in the warehouse was imputed to defendant. N.C.G.S. § 58-44-10.

**Am Jur 2d, Insurance §§ 1923, 1933.**

4. **Trial § 121 (NCI4th)— refusal to bifurcate—no abuse of discretion**

The trial court did not abuse its discretion by refusing to bifurcate bad faith and contract claims which were made by the plaintiff insureds against the defendant insurance company

WEBSTER ENTERPRISES, INC. v. SELECTIVE INSURANCE CO.

[125 N.C. App. 36 (1997)]

where both of plaintiffs' claims arose out of an interrelated nucleus of facts. N.C.G.S. § 1A-1, Rule 42(b).

**Am Jur 2d, Trial §§ 116, 120, 121.**

Appeal by defendant from judgment entered 13 March 1995 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 20 November 1996.

*Harrison, North, Cooke & Landreth, by A. Wayland Cooke, and Adams & Osteen, by William L. Osteen, Jr., for plaintiff-appellees.*

*Randolph M. James, P.C., by Randolph M. James, and Jefferson C. McConnaughey, P.C., by Jefferson C. McConnaughey, for defendant-appellant.*

MARTIN, Mark D., Judge.

Defendant Selective Insurance Company of the Southeast appeals from jury verdict awarding plaintiffs Webster Enterprises and Webster Construction Company $371,723.80 plus interest for damages arising out of a warehouse fire.

Plaintiffs' claims arise under two insurance policies, a standard fire insurance policy (policy no. 03 86 172) and an equipment binder (binder 515), issued by defendant through Business Insurers. The standard policy was issued to plaintiffs and covered the warehouse and the following property:

### Section I—Property Covered

When insurance under this policy covers "Building(s)," such insurance shall cover in accordance with the following description of coverage.

**Coverage A—Building(s):** Building(s) or structure(s) shall include . . . fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building(s); materials and supplies intended for use in construction, alteration or repair of the building(s) or structure(s); . . . personal property of the named Insured used for the maintenance or service of the described building(s) . . . .

The binder, effective 27 January 1988, was issued to Webster Construction and provided $292,000 in coverage for equipment

Webster Construction stored in the warehouse. On 24 February 1988 Webster Construction received notification from defendant the binder was being cancelled as of 12:01 a.m. standard time on 15 April 1988.

On 4 April 1988 a fire, incendiary in origin and accelerated by flammable liquids, damaged plaintiffs' warehouse on Old Reidsville-Danville Road in Ruffin, North Carolina. The fire destroyed all property stored in the warehouse.

On 3 June 1988 plaintiffs submitted three proof of loss statements to defendant. Plaintiffs claimed: (a) under the standard fire insurance policy, $41,890.50 for damages to the warehouse and $153,500 for damages to the contents of the warehouse; and (b) under the binder, $176,333.30 for damages to equipment owned by Webster Construction. Defendant refused to honor these claims because of, among other things, allegedly suspicious circumstances surrounding the origin of the fire.

On 10 October 1991 plaintiffs instituted the present action against defendant alleging breach of contract and breach of the duty of good faith and fair dealing. On 23 June 1993 defendant filed a motion for summary judgment which the trial court, by order entered 9 August 1993, subsequently denied. On 3 February 1994 plaintiffs, pursuant to N.C.R. Civ. P. 15, filed a motion to amend their complaint to allege: (1) defendant is estopped from denying coverage under the binder because the cancellation notice indicated coverage would continue until 15 April 1988; and (2) the notice of cancellation, in and of itself, constitutes a contract of insurance between the parties. On 5 July 1994 the trial court denied plaintiffs' motion to amend.

On 18 January 1995 plaintiffs filed a motion for summary judgment concerning the validity of the binder at the time of the fire. The trial court granted plaintiffs' motion and subsequently instructed the jury there was no issue as to the existence of coverage under the binder.

After hearing all the evidence, the jury returned the following verdict:

1. Did the plaintiffs . . . , through their agent Henry Webster, intentionally cause the burning of their warehouse on April 4, 1988?

No.

2. Did the plaintiffs . . . , through their agents, willfully falsely swear to a material fact or circumstance in connection with their insurance?

No.

3. Did the plaintiffs . . . , through their agents, willfully conceal or misrepresent a material fact or circumstance in connection with their insurance claim?

No.

4. What amount, if any, are the plaintiffs . . . entitled to recover of the defendant . . . as compensatory damages arising out of the April 4, 1988 fire for:

Warehouse: $41,890.50

Contents: $153,500.00

Equipment: $176,333.30

5. Did [defendant] tortiously act in bad faith in handling or denying plaintiffs' claims and was such conduct aggravated?

Yes.

6. What amount of punitive damages, if any, do you award to the plaintiffs?

None.

On 14 March 1995 defendant made a motion for judgment notwithstanding the verdict (JNOV) which, by order signed 3 May 1995, the trial court denied.

On appeal, defendant contends the trial court erred by: (1) concluding, as a matter of law, the binder was valid on the date of the fire; (2) denying defendant's directed verdict motion in light of plaintiffs' misrepresentation of material facts; (3) denying defendant's directed verdict motion on the increase of hazard defense; and (4) submitting plaintiffs' bad faith claims to the jury.

At the outset we note defendant's brief constitutes a blatant violation of N.C.R. App. P. 26(g). *Lewis v. Craven Regional Medical Center*, 122 N.C. App. 143, 147, 468 S.E.2d 269, 273 (1996). Each page of a <u>properly</u> formatted brief should contain no more than 27 lines of double spaced text with, at most, 65 characters per line. *Id.* In calcu-

lating characters per line, all letters, spaces, and punctuation marks must be considered. *Id.* In direct contravention of this mandate, defendant's brief utilizes a font which compresses approximately 105 characters per line. Such a manifest disregard for the Rules of Appellate Procedure would normally result in dismissal of defendant's appeal. We nevertheless waive the above violation, N.C.R. App. P. 2, and consider the merits of the present appeal because of the temporal proximity between the date defendant filed its brief, 10 May 1996, and the date the *Lewis* opinion was filed, 2 April 1996.

I.

[1] We first consider whether the trial court erred by finding, as a matter of law, that the binder was in full force and effect on the date of the fire, 4 April 1988.

It is well settled that parties are bound by admissions and allegations within their pleadings unless withdrawn, amended or otherwise altered pursuant to N.C.R. Civ. P. 15. *See, e.g., Dorton v. Dorton*, 69 N.C. App. 764, 765-766, 318 S.E.2d 344, 355, *disc. review denied*, 312 N.C. 621, 323 S.E.2d 922 (1984). Such judicial admissions have "the same effect as a jury finding and [are] conclusive upon the parties and the trial judge." *Buie v. High Point Associates Ltd. Partnership*, 119 N.C. App. 155, 158, 458 S.E.2d 212, 215, *disc. review denied*, 341 N.C. 419, 461 S.E.2d 755 (1995). It naturally follows the pleader cannot take a position contrary to its judicial admission. *Rollins v. Miller Roofing Co.*, 55 N.C. App. 158, 161-162, 284 S.E.2d 697, 700 (1981).

In the present case, plaintiffs alleged, in paragraph seven of their complaint, that "At the time of the fire, [defendant] also insured equipment belonging to [Webster Construction] under an insurance binder issued by its agent Business Insurers, Inc." Defendant, by way of its answer, admitted the above allegation. Consequently, under *Dorton* and *Buie*, the validity of the binder at the time of the fire was conclusively established unless defendant withdrew, amended, or otherwise altered its judicial admission.

Toward that end, we note defendant failed to formally amend its answer. *See* N.C. Gen. Stat. § 1A-1, Rule 15 (1990). Defendant nonetheless argues that its motion for summary judgment concerning the alleged invalidity of the binder, *see* N.C. Gen. Stat. § 58-44-20(4) (1994), effectively withdrew its previous admission that the binder was in full force and effect at the time of the fire. To support this proposition, defendant relies on *Barrett, Robert & Woods v. Armi*, 59

N.C. App. 134, 296 S.E.2d 10, *disc. review denied*, 307 N.C. 269, 299 S.E.2d 214 (1982), *recons. denied*, —— N.C. ——, 312 S.E.2d 649 (1984). *See also Miller v. Talton*, 112 N.C. App. 484, 487-488, 435 S.E.2d 793, 796-797 (1993).

The *Barrett* Court concluded, based on the nature of summary judgment and the liberal rules governing amendments to pleadings, that "unpleaded affirmative defenses [should] be deemed part of the pleadings where such defenses are raised in a hearing on motion for summary judgment." *Barrett*, 59 N.C. App. at 137-138, 296 S.E.2d at 13 (citations omitted). *See Miller*, 112 N.C. App. at 487-488, 435 S.E.2d at 796-797 (emphasizing party may properly assert previously unpled affirmative defense through motion for summary judgment only if no prejudice to opposing party). Unlike *Barrett*, however, defendant here waived its right to contest the validity of the binder by admitting, in its answer, that the binder was in effect at the time of the fire. *See J. W. Cross Industries v. Warner Hardware Co.*, 94 N.C. App. 184, 186, 379 S.E.2d 649, 650 (a party may waive virtually any right it possesses), *disc. review denied*, 325 N.C. 271, 384 S.E.2d 515 (1989). Defendant nonetheless argues there is no legally significant distinction between (a) raising a previously unpled affirmative defense through a motion for summary judgment, and (b) withdrawing a judicial admission through a subsequent motion for summary judgment.

To the contrary, we do not believe *Barrett* authorizes the withdrawal of a party's solemn admission through the mere filing of an inconsistent motion for summary judgment. To hold otherwise would emasculate not only the conclusive nature of judicial admissions but also the plain language of N.C.R. Civ. P. 15, which clearly provides that, under the present facts and circumstances, "a party may amend his pleadings only by leave of court or by written consent of the adverse party," N.C. Gen. Stat. § 1A-1, Rule 15(a) (1990) (emphasis added). Further, we recognize an expansive interpretation of the *Barrett* rule may also provide a sword to delay trials—by filing a motion for summary judgment on the eve of trial which is inconsistent with a prior admission, a party could unilaterally delay a trial while the other party is forced to take further discovery on what it appropriately assumed was a judicially established fact.

Therefore, as defendant failed to formally amend its response to paragraph seven of plaintiffs' complaint pursuant to Rule 15, the validity of the binder on 4 April 1988 was conclusively established. Accordingly, we affirm the trial court's ruling the binder was, as a

matter of law, in full force and effect on 4 April 1988, the date of the fire.

## II.

**[2]** We next consider defendant's allegation the trial court erred by failing to grant defendant's motion for directed verdict based on alleged false and material misstatements knowingly made by plaintiffs.

As mandated by N.C. Gen. Stat. § 58-44-15, the insurance policy issued by defendant contained the following provision:

> This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

*Id.* (1994) (lines 1-6 of standard 165-line policy). "[T]he condition against false swearing is broken when a false oath is knowingly and willfully made by the insured as to any matter material to the insurance or the subject thereof . . . ." *Shields v. Nationwide Mut. Fire Ins. Co.*, 61 N.C. App. 365, 368-369, 301 S.E.2d 439, 442 (*quoting Globe & Rutgers Fire Ins. Co. v. Stallard*, 68 F.2d 237, 240 (4th Cir. 1934)), *disc. review denied*, 308 N.C. 678, 304 S.E.2d 759 (1983). Simply put, to void a fire insurance policy for either misrepresentations or false swearing, the insurer must prove that the insured knowingly and willfully made statements which were false and material. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 370, 329 S.E.2d 333, 338 (1985). In any event, unless "the insured's misrepresentations cannot in any way be seen as innocent," the issue of fraud or false swearing is a question of fact which remains entirely within the province of the jury. *Shields*, 61 N.C. App. at 370, 301 S.E.2d at 443 (*quoting Lykos v. American Home Ins. Co.*, 609 F.2d 314, 315-316 (7th Cir. 1979) (per curiam), *cert. denied*, 444 U.S. 1079, 62 L. Ed. 2d 762 (1980)).

Assuming plaintiffs' alleged misrepresentations were material, our review of the present record indicates plaintiffs proffered evidence which, when viewed, as we must, in the light most favorable to plaintiffs, *id.* at 374, 301 S.E.2d at 445, supports a conclusion any such misrepresentations were innocent. "Obviously, . . . the jury[,] in its composite wisdom, after hearing the testimony and observing the demeanor of the witnesses, disbelieved the defendant['s] evidence and resolved the issues against [it]. The record amply sustains the

[decision] . . . ." *State v. Hedrick*, 236 N.C. 727, 731, 73 S.E.2d 904, 906 (1953). Accordingly, defendant's motions for directed verdict and judgment notwithstanding the verdict were properly denied.

## III.

**[3]** Defendant next alleges the trial court erred by directing a verdict in favor of plaintiffs on defendant's increase of hazard defense.

The standard fire insurance policy issued by defendant contained the following statutorily approved language:

> **Conditions suspending or restricting insurance.** Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured.

*See* N.C. Gen. Stat. § 58-44-15 (lines 28-32 of standard 165-line policy). As a general rule, when, as here, the insured establishes its insurance policy embraces a particular claim or injury, "the burden then shifts to the insurer to prove that a policy exclusion excepts the particular [claim] from coverage." *Hobson Construction Co. v. Great American Ins. Co.*, 71 N.C. App. 586, 590, 322 S.E.2d 632, 635 (1984), *disc. review denied*, 313 N.C. 329, 327 S.E.2d 890 (1985). Thus, "the insurer has the burden of [proving] . . . that there has been an increase of risk [or hazard]." 8 MARK S. RHODES, COUCH ON INSURANCE LAW 2D § 37A:305 (Rev. Ed. 1985).

The phrase 'increase of hazard' "denotes a change in the circumstances existing at the inception of the policy . . . ." 44 AM. JUR. 2D *Insurance* § 1200 (1982). More specifically, "increase of hazard" provisions encompass only new uses "which would increase the risk or hazard insured against, and not [] a continuation of a former or customary use, or [] a change in risk without increase of hazard. It contemplates an alteration . . . which would materially and substantially enhance the hazard . . . ." *Id.*

Defendant contends the introduction of flammable substances into the warehouse increased the hazard or risk of fire. This argument assumes flammable substances were not already located in the warehouse. The present record, however, clearly indicates flammable liquids (*i.e.* fuel for the equipment) were stored in the warehouse prior to the date defendant issued fire insurance to plaintiffs.

In response, defendant argues it had no knowledge plaintiffs stored flammable substances at the warehouse because the insurance

application indicated there were no flammables on the premises. Notably, plaintiffs did not personally file the application form. Rather, the form was completed by Business Insurers, a corporation which defendant admitted, in its answer, was its agent, at least with respect to the binder. Indeed, with regard to both the standard policy and the binder, we believe Business Insurers acted as a representative for defendant (insurer), and not plaintiffs (insured). N.C. Gen. Stat. § 58-33-20(a) (1994) ("Every agent or limited representative who solicits or negotiates an application for insurance of any kind, in any controversy between the insured . . . and the insurer, is regarded as representing the insurer and not the insured . . . ."). Thus, none of the representations in the application are properly imputed to plaintiffs.

Further, we note Business Insurers knew plaintiffs stored fuel at the warehouse. This knowledge is imputed to defendant. *Northern Nat'l Life Ins. v. Miller Machine Co.*, 63 N.C. App. 424, 429, 305 S.E.2d 568, 571-572 (1983) ("[K]nowledge of or notice to an agent of an insurer is imputed to the insurer itself, absent collusion between the agent and the insured."), *aff'd*, 311 N.C. 62, 316 S.E.2d 256 (1984). Although we acknowledge Business Insurers secured this information as a result of an inspection performed in connection with a policy issued by USF&G, not defendant, it nonetheless highlights that performance of a pre-issuance inspection, as mandated by N.C. Gen. Stat. § 58-44-10, would have revealed flammables were stored in the warehouse. The duty to inspect prior to issuance of fire insurance rests squarely on the insurer and his agent, not the insured. *See* N.C. Gen. Stat. § 58-44-10 (1994). We therefore believe plaintiffs should not bear the loss resulting from any failure of communication between defendant and its representative, Business Insurers. Rather, defendant is the proper party to shoulder the costs of faulty internal communications and procedures.

Accordingly, as defendant failed to carry its burden of proof by establishing there was an alteration in circumstances which materially and substantially increased the risk of insuring plaintiffs' warehouse against fire, we affirm the trial court's grant of a directed verdict to plaintiffs on defendant's increase of hazard defense.

IV.

[4] Defendant also contends the trial court erred by submitting plaintiffs' bad faith claims to the jury.

At the outset we note any error which attended the trial court's submission of the bad faith issue was harmless because the jury

refused to award punitive damages. *Shaw v. Stringer*, 101 N.C. App. 513, 516, 400 S.E.2d 101, 102 (1991) (erroneous submission of alienation of affection issue coupled with finding against appellant was nonetheless harmless error "since no damages were assessed against defendant"). *See also Henderson v. R. R.*, 171 N.C. 457, 459, 88 S.E. 626, 627 (1916) (improper submission of wanton negligence was harmless in that it did not tend to enhance damages in light of charge). We thus consider only whether the trial court erred by failing to bifurcate plaintiffs' contractual and extra-contractual claims.

N.C. Gen. Stat. § 1A-1, Rule 42(b) provides:

> The court may in furtherance of convenience or to avoid prejudice and shall for considerations of venue upon timely motion order a separate trial of any claim, crossclaim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, crossclaims, counterclaims, third-party claims, or issues.

*Id.* (1990). The trial court is vested with broad discretionary authority in determining whether to bifurcate a trial. *Roberts v. Young*, 120 N.C. App. 720, 724-725, 464 S.E.2d 78, 82 (1995). This Court will not superimpose its judgment on the trial court absent a showing the trial court abused its discretion by entering an order manifestly unsupported by reason. *Id.* at 725, 464 S.E.2d at 82.

Defendant argues that severing the breach of contract and bad faith claims would have resulted in a more concise, orderly, and understandable presentation of the issues to the jury. While we recognize submission of a single issue per case would certainly decrease the burden on our juries, such a proposal is irreconcilable with the overriding interests of judicial economy. In any event, as both plaintiffs' claims arise from an interrelated nucleus of facts, the trial court did not abuse its discretion by refusing to bifurcate the contractual and extra-contractual issues. Accordingly, we affirm the trial court's denial of defendant's motion to sever the breach of contract and bad faith issues.

Finally, we note, after careful consideration of the present record, that defendant's remaining assignments of error are wholly without merit.

No error.

Chief Judge ARNOLD and Judge EAGLES concur.