**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHRISTINA A. REYNOLDS,
Plaintiff-Appellant,

v.

UNITED OF OMAHA LIFE INSURANCE
COMPANY,
Defendant-Appellee.

No. 98-1389

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-97-1050-A)

Argued: October 28, 1998

Decided: December 7, 1998

Before NIEMEYER and MICHAEL, Circuit Judges, and
BOYLE, Chief United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** J. Charles Curran, KIDWELL, KENT & CURRAN, Fair-
fax, Virginia, for Appellant. Robert William Hesselbacher, Jr.,
SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appel-
lee. **ON BRIEF:** Harold Kent Kidwell, KIDWELL, KENT & CUR-
RAN, Fairfax, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Christina A. Reynolds (Reynolds) appeals the district court's grant
of United of Omaha Life Insurance Company's motion for summary
judgment. The underlying claim was Reynolds' suit seeking benefits
under four life insurance policies issued by United of Omaha Life
Insurance Company (United) to her late father, James H. Powell.
United refused to pay benefits on these policies on the grounds that
Powell had deceived United when applying for the policies.

In May of 1995, Powell met with a United agent and applied for
a life insurance policy. In his application, Powell answered "no" to
questions asking whether he had received medical care for or had sei-
zures, convulsions, paralysis, stroke, mental disorder, emotional dis-
order, or brain disease in the past five years. He also answered "no"
to a question asking if he had been examined or received medical care
for any other mental or physical disorder or bodily injury in the past
five years. Powell also stated that he had not had or received medical
care for any respiratory disorder in the ten years prior to applying for
life insurance.

United also conducted a telephone interview with Powell, which
produced a report that was largely consistent with Powell's applica-
tion. United requested various medical records in May, and again in
August, of 1995. The information received in the medical records was
generally consistent with Powell's application. However, on August
24, 1995, United received a report which indicated that Powell had
told his doctor that "he was involved as a guard in the assassination
of President Kennedy in France(?)," and records indicated that Powell
had a history of hypertension and pneumonia. Meanwhile, Powell had
applied for a second life insurance policy from United, which was
issued on September 4, 1995, after an August 26, 1995 paramedical
inspection of Powell produced statements from Powell consistent with
his earlier applications.

2

On October 1, 1995, Powell applied for two additional life insurance policies from United. Based upon these applications, which were virtually identical to Powell's earlier applications, United issued these policies later in October 1995.

Powell died of respiratory arrest caused by multiple myeloma and chronic obstructive lung disease on May 26, 1996. Reynolds made demand for benefits under United's four insurance policies on Powell's life on July 10, 1996. On December 30, 1996, United informed Reynolds that a claim investigation had revealed that Powell had been treated for significant and long-standing mental health problems, which were not disclosed on the insurance applications or revealed by United's investigations. United went on to state that the four policies in question would not have been issued to Powell had United been aware of Powell's conditions and treatment at the time of application. United declared the policies void from the date of inception, denied Reynolds' claim, and issued a check refunding the premiums paid on the policies.

Reynolds concedes that Powell, in spite of his statements made to United, had a long history of serious mental illness (diagnosed as either schizophrenia or bipolar disorder), and had been hospitalized numerous times in the five years before applying for life insurance from United, and as recently as July 1995. Reynolds also acknowledges that the answers to some health questions on Powell's applications for life insurance were untrue as a matter of fact.

However, Reynolds argues that United should not have relied on Powell's false statements to United. According to Reynolds, the inconsistencies in the information United received should have put it on notice of Powell's untrue statements. Reynolds points out that Powell named a different treating physician on August 26, 1995 than he had in earlier applications. Reynolds also points to the scrawled statement in one of the Doctor's reports that United received stating that Powell said he had been involved as a guard in"President Kennedy's assassination in France(?)" The district court found that United had no general duty to go beyond the face of Powell's statements to determine that they were accurate. In making this finding, the district court relied upon well established Virginia law. See Parkerson v. Federal Home Life Ins. Co., 797 F.Supp. 1308, 1315 (E.D. Va. 1992).

3

Reynolds also argues that United was in possession of information contradictory to that in Powell's applications, took no action, and thus was estopped from relying on Powell's representations. Furthermore, Reynolds states, as United had begun its own independent investigation, United was bound by what it should have discovered had it completed the investigation.

However, the district court found that the few discrepancies between Powell's medical records and his applications and statements were not sufficient to put United on notice. Certainly, United was under no duty to investigate, as "it would be a strained result indeed that would place the burden not on the applicant to reveal the truth, but on the insurer to discover it." Rutherford v. John Hancock Life Ins. Co., 562 F.2d 290, 294 (4th Cir. 1977).

Upon review of the briefs and the record, and after consideration of oral arguments, we conclude that the district court was correct in granting United's motion for summary judgment. Accordingly, we affirm the judgment of the district court for the reasons stated in its memorandum opinion. See Reynolds v. United of Omaha Life Ins. Co., CA No. 97-1050-A (E.D.Va. February 9, 1998).

AFFIRMED

4